Ebbert, Appellant, *v.* Plymouth Oil Company et al.

Argued March 27, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Earl F. Reed,* with him *Charles M. Thorp, Jr.,* of *Thorp, Bostwick, Reed & Armstrong, Drayton Heard,* of *Heard & Heard* and *J. Roland Johnson,* for appellant.

*John O. Wicks,* with him *C. L. Wallace,* of *Weller, Wicks & Wallace* and *R. R. Wertz,* for appellees.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, May 6, 1940:

Plaintiff, a shareholder, filed her bill in equity against Plymouth Oil Company and the individual defendants, in which she prayed for a decree ordering them to produce, before the court, books, records, etc., pertaining to and explaining an item of $833,146.36 carried on the books of the corporation under the heading "Deferred Charges"; adjudicating the rights of the parties with reference to the amount named; and requiring the individual defendants to account to the corporation for all losses it may have suffered by reason of the breach by all, or any of them, of their fiduciary relationship to the corporation. Being of opinion that laches appeared on the face of the bill, the court sustained defendants' preliminary objections and dismissed the proceeding. Plaintiff appeals.

The bill recites that plaintiff has been a shareholder in the corporation since January 1, 1926, and that the defendants, Davenport, Hallanan, Holliday and Huston

have been among its directors since 1930, Paul G. Benedum since 1931, Trees since 1932, Jones since 1934, that Dally was one at the time of filing the bill, and that Michael L. Benedum was such during the years 1930 to 1934 inclusive. It is averred that on July 9, 1925, William M. Henderson and others filed a bill in equity in the Court of Chancery of the State of Delaware, against the corporation and certain individual defendants, to compel the surrender to, and cancellation by the corporation, of 700,000 shares of its capital stock, alleged to have been fraudulently and illegally issued and acquired by the individual defendants therein, some of whom are defendants in this bill, naming them. Another averment is that on December 9, 1925, Henderson filed a bill in equity in the District Court of the United States for the Western District of Pennsylvania, against the corporation, to compel it to register certain stock certificates on its books in the name of the plaintiff. It is further averred that the corporation had no substantial interest in the matters in litigation in the two suits, or in the outcome of either, that it was merely a stakeholder, and nominal party, that in the Delaware suit, the real parties in interest were the plaintiffs, and the individual defendants, and in the other suit, the real parties in interest were the plaintiff and the intervening defendant, Farquhar. Continuing, the bill sets forth that on July 27, 1938, at a meeting of the board of directors of the corporation, by resolution, the amount of $833,146.36, which had been listed and carried on the books as an asset, under the heading of "Deferred Charges" during the years 1930 to 1938 inclusive, was removed from the books, as an asset, and charged off against the earned surplus of the corporation. It is asserted that all, or substantially all of this sum, represented moneys paid out of the funds of the corporation, for counsel fees, costs and other litigation expenses in the two suits, that only a negligible part of the services rendered by counsel, and of the expendi-

tures made in defending the suits, were for the benefit, or on behalf of, the corporation, and that the payments were for the direct benefit, and on behalf, of the individual defendants, and solely in their interest, and that the payment from the funds of the corporation was without consideration, unlawful and illegal and constituted an unlawful diversion of the corporation's funds, and a fraud on the corporation and its stockholders. It is stated that Michael L. Benedum was and is the principal stockholder of the corporation, controlling a majority of the outstanding capital stock, and that a large part of the amount expended was for his personal benefit, in defense of the Delaware suit, in which he was a defendant, and that, by reason of such payment, he is indebted to the corporation. It is averred that the $833,146.36 was not a proper deferred charge of the corporation, and was so designated in furtherance of a conspiracy between the individual defendants, for the purpose of concealing from the stockholders the rights of the corporation therein. It is set forth that the defendants have fraudulently concealed information and knowledge of the nature of the items and charges constituting the expenditures. An additional charge is that the defendants have been wilfully and grossly negligent in the performance of their offices, and have violated their duties as directors and officers, in that, knowing the sum named was the property of the corporation, they have neglected and refused to take action to recover for the corporation, all or any part of the amount from the persons, on behalf of whom, and for whose benefit, it was paid out of the corporate funds, the reason being that such action would be adverse to the personal interests of certain of the defendants, who were directly and unlawfully benefited by the payment. The allegation is made that defendants, Michael L. Benedum, Dally, Holliday, Hallanan and Huston, have conspired and agreed that the $833,146.36 should be carried on the books of the corporation as an asset, to mislead the stock-

holders and to prevent them from taking any action to recover the amount, and further have conspired and agreed that the amount should be charged off against the earnings of the corporation, and that the action of the directors in so charging the sum, was in furtherance of the conspiracy, and in fraud of the corporation and its stockholders. Subsequently, an amendment was offered to the bill, in which it was averred that plaintiff was actually misled by the designation "Deferred Charges," and that it would have been useless to inquire of defendants, because other stockholders had been refused information.

In considering the question before us, these matters of time are to be carried in mind: The sum involved was paid prior to 1930. Its appearance in the balance sheet and statement to stockholders as "Deferred Charges" was in that year, and was so carried in subsequent years, including 1937. The resolution of the board of directors, charging the amount to earned surplus, was passed July 27, 1938. This suit was begun September 26, 1938. Was there such delay as precludes equitable relief?

The position of appellant is that the funds of the corporation were improperly used to pay expenses, in which the directors and others were primarily, and the corporation only nominally, interested, and that the sum so paid was carried as an asset in the annual reports to stockholders under the designation "Deferred Charges," which amounted to a representation that the corporation had recoverable claims, and that she was not put upon notice that the corporation and the directors did not intend to recover them, until the amount was charged to earned surplus in 1938, following which action she promptly proceeded.

. The contention of defendants is that the setting up of the sum named, under the designation "Deferred Charges" in 1930, was notice to plaintiff, and, as she did nothing to assert her right until eight years there-

after, she is guilty of laches, and barred from further proceeding. In this connection, appellees point to the Act of March 28, 1867, P. L. 48, 12 PS Sec. 41, the language of which is "that no suit, at law or in equity, shall be brought or maintained against any stockholder or director in any corporation or association, to charge him . . . . with any neglect of duty as such stockholder or director, except within six years after . . . the commission of such act of negligence by such stockholder or director."

At this stage of the proceeding, we must take the averments of plaintiff's bill as true, and therefore assume that the payment from the corporation's treasury was unlawful, and in violation of her rights as a shareholder.

The immediate question for decision, therefore, is whether the placing of the amount paid in the reports to stockholders as an asset, under the designation "Deferred Charges," amounted to a concealment and relieved plaintiff from the duty of investigating the item as soon as it appeared, and incidentally whether, as appellees contend, such designation, in itself, was notice that the sum indicated was not an asset. To fortify their position in this respect, appellees rely, as did the chancellor, upon what is implied by the term "Deferred Charges" among accountants, and it is said the term as used "means that it includes expenditures which have been made, the charging of which to income or surplus has been deferred . . . amounts that have been paid, but which properly should be charged to the operations of subsequent accounting periods." To sustain this position, a booklet of the American Institute of Accountants is quoted, as are also other accountants' publications, year books, manuals and textbooks. We think, however, the ordinary person is not to be visited with knowledge of this technical terminology, and so far as plaintiff is concerned, what the statements conveyed to her was that this large sum of $833,146.36 was an asset

of the corporation and amounted to a concealment of its true nature, and she was not put upon inquiry until its status was changed by being charged to surplus. See *Bailey v. Jacobs,* 325 Pa. 187, 189 A. 320. In the amendment to her bill, which the court should have allowed, she averred that she was actually misled and deceived by the designation "Deferred Charges." Represented as an asset, it added to the value of appellant's shares and, in our opinion, she is entitled to know of what it consisted and why it was charged to surplus and thus made of no value.

We conclude that the court erred in dismissing the bill on the ground of laches. We do not decide anything so far as the merits of the case are concerned, or the liability of all or any of the defendants, this will arise, if at all, from the proofs. All that we now determine is that the bill should not have been summarily dismissed on the ground that on its face it shows plaintiff barred by laches.

Decree of dismissal reversed with a procedendo in Appeal No. 74, March Term, 1940. Appeal No. 75, March Term, 1940, covering the refusal of the amendment to the bill, is sustained. Costs on both appeals to abide final decree.