**Edison HEDGES**

**v.**

**Joseph PRIMAVERA, Individually and Trading as the House of Primavera.**

**Civ. A. No. 27248.**

United States District Court
E. D. Pennsylvania.

June 28, 1963.

Arkus & Cooper, Atlantic City, N. J., Bennett & Bricklin, Joseph Restifo, Philadelphia, Pa., for plaintiff.

George P. Williams, III, Philadelphia, Pa., for defendant; Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.

KRAFT, District Judge.

Plaintiff brought this action to recover damages claimed to have resulted from defendant's alleged fraud in the sale to plaintiff of certain musical instruments. Defendant filed a counterclaim for a balance due on a contract under which defendant repaired and restored a cello at plaintiff's request.

The case was tried to the Court, pursuant to stipulation. From the evidence submitted, we make the following

### FINDINGS OF FACT

1. On September 1, 1944, plaintiff purchased a violin from defendant for $12,000, in reliance on defendant's representations that the violin was a genuine Stradivarius.

2. The violin was not a genuine Stradivarius, but was one probably made by Genaro Galliano, which, at the time of the sale to plaintiff, had a fair value of $1,100.

3. In connection with his sale of the violin to plaintiff, defendant committed the following acts of concealment and deceit:

(a) On several occasions during the year prior to the sale, defendant stated

to plaintiff that the violin was a genuine Stradivarius and had been in his family for several generations; that it was his prize possession and that he would not part with it for any monetary consideration.

(b) Contemporaneously with the sale and delivery of the violin, defendant took from his safe and gave to the plaintiff an old document which he stated was proof of the genuineness of the instrument.

(c) In the latter part of 1946, defendant procured insurance on the violin and delivered to plaintiff the insurance policy insuring one Stradivarius violin of the value of $15,000.

(d) In a conversation with plaintiff in late 1944, defendant indicated by his conduct and statements that the violin was a genuine Stradivarius.

(e) In another conversation with plaintiff late in 1957 or early in 1958, defendant insisted that the violin was a Stradivarius and was worth $35,000 or $40,000.

4. Some time in the summer of 1946, plaintiff purchased a cello from defendant for $5,000, in reliance on defendant's representations that the cello was a genuine Bergonzi.

5. The cello was not a genuine Bergonzi, but was a cello of English make, probably the work of John Betts, which, at the time of the sale to plaintiff, had a fair value of $300 to $400 if repaired, at a repair cost of $100.

6. In connection with his sale of the cello to plaintiff, defendant made the following statements in an effort at concealment:

(a) In a conversation with plaintiff in 1954, defendant repeated his representation that the cello was genuine Bergonzi.

(b) On an occasion in 1957, at his place of business, defendant, referring to plaintiff's cello, stated to a Mr. Harper, "This is the Bergonzi that I sold to Mr. Hedges".

7. Some time between September 1, 1944, and February 28, 1945, plaintiff purchased two violin bows from defendant for $300, in reliance on defendant's representations that one of the bows was a Torte and the other was a Picot.

8. The violin bows were not a Torte and a Picot, respectively, as represented. At the time of the sale to plaintiff, they had a fair value of $25 each.

9. Plaintiff was introduced to defendant in 1943 by one Ira Smith, a mutual friend of long standing, who was much interested in music and musical instruments, and spoke very highly of defendant as an expert and dealer in musical instruments.

10. Defendant had been the proprietor of a violin shop since 1924; he repaired, restored and appraised violins and cellos, and acted as a broker and agent "for all the musicians". He had been connected with the business in one or another capacity since coming to this country in 1909.

11. While plaintiff played the cello, he did not know one cello from another, and he knew nothing about violins. In the transactions here involved, plaintiff relied entirely upon defendant's superior knowledge, skill and experience.

12. The violin which plaintiff purchased from defendant had been in Ira Smith's possession for some years, and Smith, in good faith and apparently relying on other earlier representations of defendant, had assured plaintiff it was a genuine Stradivarius.

13. Over the years between 1943 and 1958, a strong personal friendship existed between plaintiff and defendant; plaintiff had the utmost faith and confidence in defendant and frequently visited defendant in his shop; defendant advised plaintiff with respect to violin teachers for plaintiff's daughter; and plaintiff's wife and daughter frequently stopped in defendant's shop after the lessons so that defendant could see the daughter's progress on her "Stradivarius".

14. Plaintiff first became aware of defendant's misrepresentations early in 1958 when he had the instruments ap-

praised, as the result of disturbing information from a mutual friend.

15. Under all the facts and circumstances, plaintiff exercised reasonable diligence in the ascertainment of the true facts of the transactions between plaintiff and defendant.

16. Plaintiff instituted this suit against defendant on November 5, 1959.

17. Some time in 1954, plaintiff delivered a cello, property of the Harper Estate, to the defendant for repair and restoration, and defendant agreed to do the work for $750.

18. As security for payment of the contract price, plaintiff delivered to defendant another cello which defendant accepted at a valuation of $300 and paid defendant $200 in cash, leaving a balance due defendant of $250.

19. Defendant performed the work of repair and restoration of the Harper cello, in accordance with the oral agreement between plaintiff and defendant.

20. Thereafter, a dispute arose as to plaintiff's authority to order the restoration work on the Harper cello. The Harper Estate finally paid plaintiff $250 in settlement; plaintiff paid $50 of this for legal services, and retained $200 as reimbursement for his payment to defendant; and plaintiff yielded all rights to the cello given to defendant. Plaintiff explained the settlement to defendant who stated he was "perfectly satisfied" and to "forget it"

## DISCUSSION

The evidence was in direct and irreconcilable conflict on every material issue. Careful consideration persuades us, however, that the clear weight of the credible evidence supports the foregoing findings of fact.

█ The facts establish beyond peradventure that plaintiff was induced to purchase the violin, the cello and the violin bows by defendant's false and fraudulent representations in respect thereto. To paraphrase the language of the Supreme Court of Pennsylvania in Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442, 455, 51 A.2d 759, 52 A.2d 177 (1947), the plaintiff's justifiable reliance on the defendant's misrepresentations was at least a "substantial factor" and a "material inducement" in causing him to part with his money. That is the test.

The serious question before us is whether all the plaintiff's claims are barred by the Statute of Limitations, which provides in this type case for the bringing of action within six years. 12 P.S. § 31.

In the leading case of Smith v. Blachley, 198 Pa. 173, 47 A. 985, 53 L.R.A. 849 (1901), the Court stated: "The general rule that statutes of limitation run from the act complained of in cases of tort as well as of contract admits a well settled exception on account of fraud". The Court adverted to the diversity of view in this country and England, and particularly noted the rule in the United States Courts as exemplified in the landmark case of Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 343, 22 L.Ed. 636 (1874). The Court then proceeded to define the rule applicable in Pennsylvania (198 Pa. p. 179, 47 A. p. 987):

"The cases which hold that, where fraud is concealed, or as sometimes added, conceals itself, the statute runs only from discovery, practically repeal the statute pro tanto. Fraud is always concealed. If it was not no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But, if the wrongdoer adds to his original fraud, affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery."

Later cases appear to have relaxed, or at least modified, the rule to some

degree. In Deemer v. Weaver, 324 Pa. 85, 88, 187 A. 215, 216 (1936), it is stated: "If by any act of concealment or deceit, whether before or at the same time or after the act is committed, the wrongdoer hides from the innocent party the facts which would put him upon inquiry, the statute does not begin to run".

We shall not attempt to review the Pennsylvania decisions. That task was ably performed by Judge (now Chief Judge) Biggs in his dissenting opinion in Overfield v. Pennroad Corporation, 146 F.2d 889 (3d Cir. 1944). We quite agree with Judge Biggs' view respecting the trend of the Pennsylvania cases (146 F.2d p. 928,):

"The majority hold that if there was concealment by the defendants such concealment must be 'an affirmative, independent act,' citing inter alia Smith v. Blachley, 198 Pa. 173, 47 A. 985, 53 L.R.A. 849; Bailey v. Jacobs, supra [325 Pa. 187, 189 A. 320], and Ebbert v. Plymouth Oil Co., supra [338 Pa. 272, 13 A.2d 42]. The 'independent act' in the majority view must constitute 'affirmative efforts to divert, mislead, or prevent discovery,' citing Deemer v. Weaver, 324 Pa. 85, 88, 187 A. 215, 216. I agree with the majority that the Pennsylvania decisions frequently refer to the necessity of 'affirmative, independent act of concealment' over and above the original wrongful act complained of but I must dissent from the majority view as to what constitutes a correct interpretation of the Pennsylvania decisions. The Supreme Court of Pennsylvania though employing the language quoted above has mitigated the strictness of the announced rule by declaring rather slight instances of further concealment as sufficient to toll the running of the statutes of limitations here involved."

With respect to plaintiff's claim founded on his purchase of the violin, the case is clear. Even applying the Smith v. Blachley rule in undiluted form, defendant's act of insuring the violin as a Stradivarius worth $15,000—in 1946, two years after the sale—was a separate, "affirmative effort to divert or mislead or prevent discovery" which effectually tolled the statute. Other of defendant's acts and statements, as found above, only serve to strengthen the conclusion.

We think plaintiff's other claims are barred by the statute. As respects the cello, defendant's two statements, which may have tended to divert or mislead or prevent discovery, were made after the expiration of the period of limitations. It is true that the evidence discloses that defendant made certain statements to plaintiff's wife and daughter, but whatever efficacy these statements might otherwise have had, there is nothing to show that they were communicated to plaintiff, and plaintiff's wife and daughter were not parties to the contract. We find no acts or statements by defendant, at any time subsequent to the sale, which would toll the statute in respect of the claim founded on plaintiff's purchase of the violin bows.

Certain of the Pennsylvania cases contain expressions to the general effect that in cases of fraud, the statute of limitations runs only from discovery of the fraud, or from the time when, with reasonable diligence, there ought to have been discovery. We do not understand this rule as superseding the rule laid down in Smith v. Blachley and succeeding cases, but rather as supplementary thereto. We think the question, when, with reasonable diligence, there ought to have been discovery of the fraud, must be determined in light of the relation and circumstances of the parties. We have factually defined the relationship between plaintiff and defendant, as established by the credible evidence. It is unnecessary for present purposes to decide whether or not it constituted a "confidential relationship", as defined in the Pennsylvania cases. Drob v. Jaffe, 351 Pa. 297, 41 A.2d 407 (1925); Hamberg v. Barsky, 355 Pa. 462, 50 A.2d 345 (1947). In our view, the relationship between plaintiff and defendant, close and intimate as it was, explains and excuses

plaintiff's failure sooner to discover defendant's fraud and deceit.

 Plaintiff claims that he is entitled to "recission of the transaction" and to refund of the money paid. The evidence fails to show that plaintiff ever offered to rescind the contract and to restore the status quo. See, 8 P.L.E. Contracts § 251 et seq. His remedy, therefore, is limited to damages. The measure of damages in this action is the plaintiff's actual loss, which is measured by the difference between what he paid out and the actual value, at the time of the purchase, of what he received. Peters v. Stroudsburg Trust Co., 348 Pa. 451, 35 A.2d 341 (1944).

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. The law of Pennsylvania applies to the transactions between plaintiff and defendant.

3. The contract of sale and purchase of the violin was induced by defendant's fraud and deceit.

4. Plaintiff's claim for damages arising from his purchase of the violin is not barred by the Statute of Limitations.

5. Plaintiff is entitled to recover damages from defendant in the sum of $10,900.

6. The contract of sale and purchase of the cello was induced by defendant's fraud and deceit.

7. Plaintiff's claim for damages arising from his purchase of the cello is barred by the Statute of Limitations.

8. The contract of sale and purchase of the violin bows was induced by defendant's fraud and deceit.

9. Plaintiff's claim for damages arising from his purchase of the violin bows is barred by the Statute of Limitations.

10. Defendant's counterclaim against plaintiff for the balance due on the contract for the restoration of the Harper cello was extinguished by an accord and satisfaction.

11. Plaintiff is entitled to judgment on defendant's counterclaim.