

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-1997

# Beauty Time Inc v. VU Skin Sys Inc

Precedential or Non-Precedential:

Docket 96-3572

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"Beauty Time Inc v. VU Skin Sys Inc" (1997). *1997 Decisions.* Paper 146.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/146

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 3, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3572

BEAUTY TIME, INC.; BEAUTY MAKERS, INC.;
& R. RICHARD RISO,
Appellants,

v.

VU SKIN SYSTEMS, INC.; BJV; DPM SKIN SYSTEMS,
INC.; & MARION M. VUJEVICH,
Appellees.

An Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civ. No. 95-1176

Argued April 17, 1997

Before: GREENBERG, ALITO and ROSENN, Circuit Judges.

Opinion Filed July 3, 1997

Kenneth P. McKay (argued)
Law Offices of K. Patrick McKay
3755 Library Road
Pittsburgh, PA 15234-2266
Counsel for Appellants

Daniel P. McDyer (argued)
Anstandig, McDyer, Burdette &
 Yurcon, P.C.
600 Gulf Tower, 707 Grant Street
Pittsburgh, PA 15219
Counsel for Appellees

**OPINION OF THE COURT**

Rosenn, <u>Circuit Judge</u>.

This appeal primarily presents a novel question in this Circuit concerning the constructive notice provisions of the Lanham Act, 15 U.S.C. § 1058, the application of a statute of limitations borrowed from the state of Pennsylvania, and the tolling principles of that state. The United States District Court for the Western District of Pennsylvania dismissed the action for fraudulent re-registration of a trademark as time barred, and the remainder of the complaint for lack of standing, failure to state a claim, and pendant jurisdiction. The plaintiffs timely appealed. We affirm in part and vacate in part.

I.

In 1981, Marion J. Vujevich filed an application for the registration of the trademark "DPM" with the United States Patent and Trademark Office ("PTO") for use in interstate commerce of medicated and non-medicated cosmetics. In 1983, Vujevich obtained the registration of the trademark and listing as the sole user of the trademark. Vujevich and BJV, a limited partnership in which Vujevich participated, used this trademark exclusively until 1987.

In 1987, Vujevich allegedly agreed to form a corporation with R. Richard Riso to manufacture and distribute products bearing the DPM trademark. This new corporation, Beauty Time, Inc., a Delaware corporation, of which Riso is the sole shareholder, began distributing products in or about August 1987 bearing the DPM trademark. Plaintiffs allege that Vujevich had orally assigned the DPM mark to Beauty Time in 1987 for its

2

exclusive use and Beauty Time claims to have used the mark exclusively from 1987 to 1991.

In February, 1989, Vujevich filed a combined §§ 8 and 15 declaration1 in his own name as owner and registrant with the PTO seeking renewal of the trademark in accordance with federal trademark registration law. Vujevich filed an affidavit in connection with the declaration asserting that he was the sole owner and user of the trademark. Vujevich allegedly used Beauty Time packaging in support of this declaration. In July, 1989, the ownership of the trademark became "incontestable" and the PTO renewed Vujevich's registration of the DPM trademark, with no mention of the alleged assignment of the mark to Beauty Time and its junior use of the mark.

In 1991, Vujevich allegedly began marketing and selling items bearing the DPM trademark without the consent of Beauty Time or Riso. According to the plaintiffs, these products were distributed under the names VU Skin Systems and DPM Skin Systems. Beauty Time unsuccessfully sought to compel Vujevich to cease from distributing these products bearing the DPM trademark. In August, 1994, Vujevich informed a number of purchasers and retailers of the Beauty Time products that he, Vujevich, was the owner of the DPM trademark and that Beauty Time was infringing on the trademark. Most of these customers stopped purchasing Beauty Time products based upon Vujevich's assertions of ownership.

In July, 1995, Riso ascertained that Vujevich had re-registered the trademark in 1989 listing Vujevich as the sole owner and user of the trademark. Soon thereafter, the plaintiffs brought this action against the defendants seeking cancellation of the trademark, declaratory and injunctive relief, and monetary damages. The amended

---

1. 15 U.S.C. § 1058 (Supp. 1997) provides for the cancellation of a prior registration of a mark "unless within one year next preceding the expiration of [six years from the date of the original registration] the registrant shall file in the Patent and Trademark Office an affidavit" showing that mark is still in use. Upon filing of such affidavit, the right to use the mark under certain conditions may become incontestable to 15 U.S.C. § 1065 (Supp. 1997).

3

complaint asserted eleven counts: four federal counts [trademark infringement (I), false advertising (II), false designation in interstate commerce (III), and fraud under the Lanham Act (XI)] and seven state statutory and common-law counts [violation of the state anti-dilution statute (IV), common law trademark infringement (V), fraudulent misrepresentation (VI), breach of contract (VII), tortious interference with contract (VIII), unjust enrichment (IX), and misappropriation (X)]. The district court dismissed the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court dismissed Count XI as time-barred, Counts I through V for lack of standing, and the remainder for lack of pendant jurisdiction. The plaintiffs appealed the order dismissing their amended complaint.

II.

A.

Plaintiffs first challenge the district court order dismissing their claim of fraud under the Lanham Act as time-barred. The district court's application of the statute of limitations and the relevant tolling principles is subject to plenary review. Sheet Metal Workers Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991). The Lanham Act contains no express statute of limitations and the general rule is that when a federal statute provides no limitations for suits, the court must look to the state statute of limitations for analogous types of actions. A claim for fraud under the Lanham Act conforms to this general rule. See Official Airlines Guides, Inc. v. Goss, 6 F.3d 1385, 1395 (9th Cir. 1993); Guardian Life Ins. Co. v. American Guardian Life Assurance Co., 943 F. Supp. 509, 517 (E.D. Pa. 1996). See also Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). On this claim, it is undisputed that Pennsylvania's two-year statute of limitations for fraud actions would apply. 42 Pa. Cons. Stat. § 5524(7) (Supp. 1997). Accordingly, Pennsylvania tolling principles would also be applicable in determining whether this suit is time-barred. See Wilson, 471 U.S. at 266-67; Board of Regents of the Univ. of the State of New York v. Tomanio, 446 U.S. 478,

4

487-88 (1980); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 (1975).

Under Pennsylvania law, the statute of limitations begins to run at the time the "the right to institute and maintain the suit arises." Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). In the present matter, the allegedly fraudulent act occurred in 1989, when Vujevich re-registered the trademark with the PTO claiming that he was the sole owner and user of the DPM mark. Thus, absent any exceptions, the statute of limitations would have run in 1991, two years after the fraudulent act allegedly occurred.

Because we look to state law for the appropriate statute of limitations, we also look to Pennsylvania law on the closely related questions of tolling and application. See Wilson, 471 U.S. at 264 n.17. It is well-established that Pennsylvania law recognizes an exception to the statute of limitations which "delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." Urland v. Merrell-Dow Pharmaceuticals, 822 F.2d 1268, 1271 (3d Cir. 1987). Courts employ the "same `knew or should have known' standard whether the statute is tolled because of the discovery rule or because of fraudulent concealment." Id. at 1273. Generally, courts have followed the old chancery rule adopted by the United States Supreme Court that when a party "has been injured by fraud and `remains in ignorance of it without any fault or want of diligence or care on his part, the bar to the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' " Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (quoting Bailey v. Glover, 21 Wall. 342, 348).

Regardless of the grounds for seeking to toll the statute, the plaintiff is expected to exercise reasonable diligence in attempting to ascertain the cause of any injury. Urland, 822 F.2d at 1273-74. Reasonable diligence has been defined as follows: "A fair, proper and due degree of care and acting, measured with reference to the particular circumstances;

5

such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." Black's Law Dictionary 457 (6th ed. 1991). As the court observed in Urland, there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and suggest investigation. Urland, 822 F.2d at 1273. Plaintiffs assert that they had no reason to check the registration of the trademark with the PTO until they became aware that the trademark had been re-registered in 1989 listing Vujevich as its sole owner and user. The question thus becomes when did or when should the plaintiffs have become aware of the concerns regarding the re-registration of the trademark DPM.

The dissent mistakenly believes that Pennsylvania has carved out a separate tolling rule that "governs in fraud actions," a rule which would inexplicably make it more difficult to toll the statute of limitations when the defendant has engaged in fraud. Under the dissent's view, the discovery rule has no application in cases of fraud unless the fraud thereafter has been actively concealed by the wrongdoer. This erroneous concept arises out of a misunderstanding of the origin and application of the discovery and fraudulent concealment rules in Pennsylvania's tolling of its statute of limitations.

Initially, Pennsylvania's Statute of Limitations (Act of June 24, 1895, P.L. 236 § 2) provided that every suit to recover damages for personal injuries not resulting in death must be brought within two years from the time of injury. Similarly, the statute provided for limitations for tortious actions with respect to personal and real property, and other specific misconduct. The statute made no provision for tolling or reference to fraud.2 Thus, under that statute,

_____

2. In 1982, the Pennsylvania legislature amended the statute of limitations relating to torts by adding a provision specifically governing fraud actions. The new section provides for a two-year statute of limitations for:

Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit and fraud, except an action

6

even where a personal injury or other tort was unknown to the victim, a claim not brought within two years was barred. From time to time, Pennsylvania courts were confronted with cases arising out of fraudulent misconduct where the literal enforcement of the statute would leave the victim without remedy, even when the fraud did not become known to the victim until the statute of limitations had run.

Thus, in Smith v. Blachley, 198 Pa. 173, 47 A. 985 (1901), the Supreme Court of Pennsylvania wrestled with whether the general rule that the statutes of limitations runs from the act complained of should admit an exception at least on account of fraud. The exception, not in the statutes, had been judicially introduced by some courts "acting upon principles of equity." Id. at 985. Those courts applied the principle that the fraud, although complete, operates as a continuing cause of action until discovered. In Blachley, the court concluded that it would allow an exception to toll the statute in cases of fraud only if the wrongdoer added to his original fraud affirmative efforts to mislead or prevent discovery. Id. at 987. This was Pennsylvania's recognition, although modest, that in cases of fraud an exception under certain circumstances should be made, not with the objective of constricting the statute of limitations but, as a matter of equity and fairness, to relax it in matters of fraud.

More than a half-century later, however, Pennsylvania had another opportunity to modernize its tolling principles and make them more consistent with the humanizing legislation that the State had enacted with the advent of the 20th century. Thus, in Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959), the Supreme Court of Pennsylvania for the first time announced its "discovery rule."3 In Ayers, the

_____

or proceeding subject to another limitation specified in this subchapter.

42 Pa. Cons. Stat. Ann. § 5524(7) (Supp. 1997). Prior to 1982, the statute of limitations for fraud claims was six years. 42 Pa. Cons. Stat. Ann. § 5527 (1981).

3. Ayers relied considerably in its analysis on Lewey v. H.C. Frick Coke Co., 166 Pa. 536, 31 A. 261 (1895), a case decided six years before Blachley, for its enunciation of the "discovery rule." Inexplicably, Blachley makes no mention of Lewey. We discuss Lewey more fully beginning at page 8.

court found itself confronted with a medical malpractice case where the defendant surgeon allegedly left a sponge in his patient's abdomen which was not discovered until almost nine years later.

The trial court entered judgment for the defendant because of the same two-year statute of limitations considered by the court in Blachley in 1901. The Supreme Court of Pennsylvania reversed. In announcing the discovery rule, the court did not confine it merely to personal injury actions. In fact, the court analogized that in a contract action, "the plaintiff is not prevented from filing suit after the statute of limitations has expired, if fraud has intervened," Ayers, 157 A.2d at 792, and if he has not slept on his rights. The court, therefore, held that the plaintiff was entitled to proceed with his action against the surgeon after the two-year statutory period expired because of the nature of the concealment. Id. at 794.

The defendant in Ayers argued that there was no concealment on its part. The court summarily dismissed this argument with the statement that no "greater concealment" was necessary than leaving a foreign substance within the folds of a patient's intestines until its discovery nine years later. Id. There is nothing in the court's opinion that confines its rationale to personal injury cases. On the contrary, it referred to tolling the statute in contract actions where fraud has intervened, to criminal actions where the defendant has fled the jurisdiction, and to its earlier decision in Lewey v. H.C. Frick Coke Co., 166 Pa. 536, 31 A. 261 (1895), where the defendant had committed outright fraud in extracting subterranean coal from the plaintiff's land.

In Lewey, the plaintiff did not learn of the fraudulent pilfering until seven years after the deed was done. 31 A. at 261. The trial court entered judgment for the defendant on the basis of the six-year statute of limitations. In reversing and ordering a new trial, the court stated that to hold that the statute begins to run at the date of the trespass under such circumstances -- a case clearly not involving a personal injury -- constitutes "[a] result so absurd and so unjust [as] ought not be possible." Id. at 263. The court took notice of the equity rule in English courts: that "[i]t

8

was against good conscience to permit one who had taken the property of another without the owner's knowledge, and who had failed to disclose . . . what he had taken, to avail himself of the statute [of limitations] while the owner remained in ignorance of his loss." Id.

In Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468 (Pa. 1983), the suit involved the negligent operation of a truck which damaged a tunnel on plaintiff's land. This case also concerned a suit over an injury to real property and not a personal injury action. The trial court entered summary judgment for the defendant on the ground that the statute of limitations had expired. Pocono Int'l, 468 A.2d at 470. The superior court reversed and remanded for trial, holding that the discovery rule applied, tolling the statute of limitations until the damage was reasonably ascertained by the Raceway. Id. at 470-71. On appeal to the Supreme Court of Pennsylvania, the court reaffirmed the application of the discovery rule to property actions and its holding in Lewey. Although it reversed the superior court because it concluded that the plaintiff had the ability to ascertain the cause of action and institute suit within the applicable period of limitations, it held that the discovery rule exception "arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." Id. at 471.

One of the leading cases discussing the Pennsylvania statute of limitations and its tolling principles is Gee v. CBS, Inc., 471 F. Supp. 600 (E.D. Pa.), aff'd, 612 F.2d 572 (3d Cir. 1979). Applying Pennsylvania law in a contract dispute, then District Judge Edward Becker wrote:

As we understand the case law, there are several separate inquiries we must make under facts as alleged here. The first is whether the underlying events being sued upon . . .sound inherently in fraud or deceit. If they do then that, without more, will toll the statute of limitations until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence by plaintiffs. This doctrine finds expression in Justice Frankfurter's opinion in Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946):

9

(T)his Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar to the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

Holmberg is based on the premise that fraud as a common-law cause of action is self-concealing by its nature. . . . As long as plaintiff continues to reasonably rely to his detriment on the knowingly misleading representation the fraud continues, and of necessity it is concealed from plaintiff. No additional special efforts of concealment are then necessary.

Gee, 471 F. Supp. at 622-23 (footnote omitted). Judge Becker continued:

Fraudulent concealment does not depend, as do Holmberg and Nesbitt, on the underlying cause of action . . . being inherently fraudulent. Rather, it requires independent acts of "fraudulent concealment" of the events or circumstances constituting the underlying cause of action, irrespective of whether those underlying events are inherently fraudulent or not.

Gee, 471 F. Supp. at 623.

This court has adopted the reasoning of Gee, recognizing that "Pennsylvania's inherent fraud doctrine, as set forth in Gee, focuses on whether the underlying events are based on fraud or deceit. If they are, `then that, without more, will toll the statute of limitations until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs." Sheet Metal Workers, 949 F.2d at 1280 (quoting Gee, 471 F. Supp. at 622). The court noted that the "alternative doctrine" of fraudulent concealment applied "[i]rrespective of any inherent fraud." Id. Thus, the dissent in this case has misconstrued Pennsylvania's tolling principles and would apply the fraudulent concealment doctrine in an action involving inherent fraud. As noted above, when the underlying claim

10

sounds in fraud, the statute of limitations is tolled by the tortious conduct, without any further action by the wrongdoer, until the fraud should have been discovered by the plaintiffs.

In the instant case, the dissent believes that the time when the plaintiffs discovered or in the exercise of due diligence should have discovered the fraud is irrelevant because in an action for fraud in Pennsylvania the statute of limitations is not tolled, even if fraud is concealed, "unless such fraud has been actively concealed by the wrongdoer," citing Turtzo v. Boyer, 370 Pa. 526, 88 A.2d 884, 885 (1952). There is no such general rule in Pennsylvania, although this rule may apply in certain special circumstances, such as a situation where the plaintiff claims the defendant's wrongful conduct estops the latter from pleading the statute of limitations. Were it the general rule, a bank could not recover money secretly peculated by a bank officer and not discovered until after the statute of limitations had run, unless the wrongdoer actively concealed the fraud. Thus, if there were no active concealment of the peculation after the initial fraud, there could be no recovery. That makes no sense.

Turtzo is inapposite. First, the Supreme Court of Pennsylvania decided Turtzo before it announced the "discovery rule" several years later in Ayers. Actually, Turtzo is an application of the due diligence component of the later announced discovery rule that when the plaintiff reasonably could have timely discovered the filing of a fraudulent nominating petition for Justice of the Peace and had in fact "visited the office of the County Board of Elections and inspected the petition within the week after its filing," 88 A.2d at 885, the plaintiff cannot claim that fraud vitiates the entire proceedings. "[F]raud when discovered must be acted upon with dispatch." Id. However, in the instant case, there is no evidence of record to show when the plaintiffs reasonably could have discovered the alleged fraud. Therefore, remand is required.

The cases relied upon by the dissent for the proposition that the statute of limitations in an action grounded in fraud is tolled only if the fraud thereafter has been actively concealed by the wrongdoer are inapplicable to the instant

11

case. Turtzo addressed a very specific provision of the state election code establishing a statute of limitations for contesting nomination petitions and did not address the state's general statute of limitations for tort claims. Turtzo, 88 A.2d at 885. In re Estate of Doerr, 565 A.2d 1207 (Pa. Super. 1989), addressed a specific provision of Pennsylvania's probate code establishing a statute of limitations for challenging wills; In re Thorne's Estate, 25 A.2d 811 (Pa. 1942), addressed a statute of limitations under the Fiduciaries Act. Again, neither case addresses Pennsylvania's general statute of limitations for tort claims. Additionally, Thorne's Estate and Dalzell v. Lewis, 97 A. 407, 408-09 (Pa. 1916), both preceded Ayres and the development of the discovery rule in Pennsylvania, as did Turtzo.

Northampton County Area Community College v. Dow Chemical, U.S.A., 566 A.2d 591 (Pa. Super. 1989), cited by the dissent, is also inapplicable. In that case, the college asserted that Dow fraudulently misrepresented that a chemical used in construction would not cause defects in the building. Id. at 594. The trial court dismissed the claim, finding it was barred by the six year statute of limitations then applicable to fraud actions, 42 Pa. Cons. Stat.§ 5527. Id. The college appealed, arguing that the statute was tolled until the college discovered the alleged fraud. Id. at 599. The superior court cited the rule of Turtzo, noting that "[i]f the party committing fraud is also guilty of some acts of concealment or deception which hides from the plaintiff that he has a cause of action, then the statute will run from the time discovery of the alleged fraud is made, or in the exercise of reasonable diligence should have been made." Id. (citing Turtzo v. Boyer, 88 A.2d 884 (Pa. 1952)). The court then concluded that the college, in light of all the circumstances, could not have reasonably relied on the initial fraudulent misrepresentation, thereby determining that no cause of action for fraud would lie, regardless of the statute of limitations. Thus, Northampton County, announcing a rule from Turtzo but not applying it, is simply an insufficient basis upon which to disregard the substantial body of precedent establishing that an act of fraud, by itself, will toll the statute of limitations until that

12

fraud reasonably should have been discovered by the plaintiffs. See Gee, 471 F. Supp. at 622.

In fact, as the Superior Court of Pennsylvania itself has noted, the practical difference between the discovery rule and fraudulent concealment in fraud cases has been "much reduced." In Bickell v. Stein, the court said:

Appellee cites Smith v. Blachley, 198 Pa. 173, 179, 47 A. 985 (1901) and Turtzo v. Boyer, 370 Pa. 526, 528, 88 A.2d 884 (1952) for the proposition that in actions for fraud, the statutory limitation may only be tolled by proof of "fraudulent concealment" of the original fraud. The doctrine of fraudulent concealment appears somewhat narrower than the discovery rule, because it requires a showing that defendant himself prevented plaintiff from discovering the facts by acts of deception which were independent of the acts giving rise to cause of action. However, the doctrine of fraudulent concealment has been relaxed considerably with regard to the deceptive intent of defendant's acts and their independence of the underlying, operative facts (see Nesbitt v. Erie Coach Co., 416 Pa. 89, 204 A.2d 473 (1952); Schwab v. Cornell, 306 Pa. 536, 106 A. 449 (1932); Gee v. CBS, Inc., 471 F.Supp. 600, 617-634 (E.D. Pa., 1979); Hedges v. Primavera, 218 F.Supp. 797 (E.D. Pa., 1963)), so that the practical difference between the two rules is much reduced. Furthermore, Smith and Trutzo [sic] are reconcilable with the discovery rule, because both are cases in which the court observed that the fraud was obvious or easily discoverable by a prudent individual.

435 A.2d 610, 612 n.3 (Pa. 1981).

Application of the discovery rule to fraud claims will not eviscerate the statute of limitations because aggrieved parties must still bring their claim within two years of when they learned or should have learned, through the exercise of due diligence, that they have a cause of action.4 "For

---

4. We concur with the dissent that the cases interpreting Pennsylvania's tolling rules have not been entirely free from ambiguity. However, the rule set forth in Gee and affirmed by this court is clear, and the courts of Pennsylvania have not altered this rule despite the opportunity to do so. See, e.g., Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468 (Pa. 1983); Bickell v. Stein, 435 A.2d 610 (Pa. Super. 1981).

13

statute of limitations purposes, a claimant need only be put on inquiry notice by `storm warnings' of possible fraud." Ciccarelli v. Gichner Systems Group, Inc., 862 F. Supp. 1293, 1301 (M.D. Pa. 1994). Therefore, we conclude that the discovery rule applies in Pennsylvania when the underlying cause of action sounds in fraud, and that the statute of limitations is tolled until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim.

B.

The district court determined that the plaintiffs are time-barred from bringing the action based upon the constructive notice provision of the Lanham Act that registration of a mark "shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072 (1963). The court held that the plaintiffs "were on constructive notice of any fraud committed by Vujevich in re-registering the mark DPM as of the date that the re-registration occurred in 1989." The plaintiffs argue, however, that state law tolling principles would not recognize constructive notice pursuant to § 1072 as sufficient notice of the fraud to cause the running of the statute.

The Lanham Act requires that the holder of a trademark submit an affidavit between the fifth and sixth years after registration of the trademark to establish that the mark is currently in use in commerce. 15 U.S.C. § 1058 (Supp. 1997). The PTO registered the trademark DPM on April 19, 1983; therefore, Vujevich had to submit an affidavit establishing the continued use of the mark by April 18, 1989 to maintain the registration. Pursuant to § 1058, Vujevich submitted the allegedly fraudulent affidavits on February 27, 1989, thereby successfully continuing the registration of the trademark DPM listing Vujevich as the sole owner and user of the mark. Use of this mark under certain conditions became incontestable pursuant to 15 U.S.C. § 1065.

It does not appear that the constructive notice provision of § 1072 under the Lanham Act applies to the submission

14

of affidavits under § 1058 to register the trademark or under § 1065 to establish incontestability. The briefs of the parties and our own exhaustive search reveal no case law establishing that the act of confirming the trademark's continued use in commerce satisfies the constructive notice provision of § 1072. Additionally, the language of § 1072, which speaks to "[r]egistration of the trademark on the principal register" as constructive notice does not apply to the submission of affidavits five years later pursuant to § 1058 and § 1065 of the Lanham Act. Thus, we agree with the plaintiffs that, under Pennsylvania law, the filing of the user affidavits by Vujevich did not constitute constructive notice sufficient to begin the running of the statute of limitations.

The plaintiffs' claim may still be time-barred, however, because they may have had actual notice of the alleged fraudulent re-registration as early as 1991. The plaintiffs' amended complaint charges that Vujevich began using the DPM trademark improperly in 1991. The complaint states: "On or about March 1991, Defendants began marketing and selling in interstate commerce skin products under the name VU Skin Systems. These skin products were sold under the label DPM Skin Systems products and/or DPM, using the mark DPM without license, or any other form of approval, from Beauty Time (PA)." The language of the complaint does not establish conclusively whether the plaintiffs had actual knowledge of these dealings as early as 1991; they now assert that they did not become aware of the allegedly improper use of the trademark by Vujevich until 1994. If the plaintiffs were aware of the use in 1991, this knowledge should have "awake[ned] inquiry and direct[ed] diligence in a channel in which it would be successful." Urland, 882 F.2d at 1273. Thus, if the plaintiffs knew of this conduct in 1991, then the suit should have been brought within two years of that discovery and should now properly be deemed time-barred. However, if the plaintiffs did not learn of this alleged fraud until 1994, then the action brought in 1995 is well-within the two-year statute of limitations for fraud established by Pennsylvania law.

The district court, however, failed to determine when the

15

plaintiffs actually learned of the alleged fraudulent re-registration. Thus, the order dismissing the complaint must be vacated and the matter remanded to the district court for further proceedings to determine when the plaintiffs first became aware that Vujevich was using the DPM trademark separate and independently of its use by Beauty Time.5

C.

The plaintiffs also argue that the district court erred in dismissing Counts IV, V, and VI of their remaining claims for lack of standing.6 A district court's decision to dismiss an action for lack of standing is subject to plenary review. Chem Service v. Environmental Monitoring Sys. Lab.-Cincinnati of the United States Environmental Protection Agency, 12 F.3d 1256, 1261 (3d Cir. 1993).

The district court held that the plaintiffs' state-law claims for trademark infringement and violation of the Pennsylvania Anti-Dilution Statute should be dismissed because the plaintiffs failed to show an effective assignment of the trademark and failed to establish that they had first rights to the trademark, a prerequisite to ownership rights in the trademark. The plaintiffs assert that they maintained common-law rights in the trademark regardless of the alleged inadequacies of the oral assignment, and that they therefore had standing to bring these state law claims as owners of the trademark.

The plaintiffs have not alleged that the trademark was acquired in connection with the sale of a business or otherwise transferred in connection with the goodwill associated with the trademark. Accordingly, the attempted

_____

5. Once the district court ascertains the date on or about which the plaintiffs became aware of the alleged unauthorized use of the DPM trademark, the court must determine whether that knowledge was sufficient to begin the running of the statute of limitations on both the claim of fraudulent re-registration as to ownership of the trademark and the claim for failing to declare the plaintiffs' junior use of the trademark.

6. On appeal, the plaintiffs do not challenge the district court's order dismissing Counts 1 through 3 and Counts 7 through 10.

16

oral assignment was an assignment in gross and was invalid. See United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918); Family Circle Inc. v. Family Circle Associates, Inc., 332 F.2d 534, 539 (3d Cir. 1964). The Anti-Dilution Statute expressly provides a remedy only for "a mark registered under this chapter, or a mark valid at common law." 54 Pa. Cons. Stat. § 1124 (1996). Common law trademark protections only apply when the trademark is validly acquired. The plaintiffs did not acquire any ownership rights in the trademark under Pennsylvania law, and the mark is neither registered nor valid at common law. See Browning King Co. of New York v. Browning King Co., 176 F.2d 105, 105 (3d Cir. 1949) (under Pennsylvania common law, trademarks cannot be transferred in gross). Therefore the plaintiffs have no standing to bring a claim for infringement or dilution under Pennsylvania law. Thus, we perceive no error by the district court in dismissing Counts IV and V of the plaintiffs' amended complaint seeking relief for common-law trademark infringement and violations of the state Anti-Dilution Statute.

Count VI of the plaintiffs' state law claims, which was dismissed under the pendant jurisdiction doctrine for lack of original jurisdiction over a state law claim, will be reinstated pending resolution of the matters remanded to the district court for further proceedings.

III.

Accordingly, the district court's order dismissing the plaintiffs' amended complaint will be vacated with respect to Count XI (fraud under the Lanham Act) and the case remanded to the district court for further proceedings consistent with this opinion. Additionally, the order dismissing Count VI will be vacated and the claim reinstated for further proceedings.

Costs taxed against the appellees.

17

ALITO, Circuit Judge, dissenting:

In this action, plaintiffs asserted a claim for fraud under the Lanham Act. Since the Lanham Act does not specify a statute of limitations for such a claim, we look to the state statute of limitations that applies to an analogous state law cause of action. It is undisputed that the applicable statute of limitations here is the two-year bar for fraud actions contained in 42 Pa. C.S. § 5524(7) and that this limitations period begins to run at the time the fraudulent act is completed. It is also undisputed that, in evaluating whether § 5524(7) bars plaintiffs' fraud claim, we borrow Pennsylvania's tolling rules. Thus far I am in agreement with the majority.

My disagreement with the majority lies in its choice of tolling rules. The majority holds that the "discovery rule," under which the statute of limitations is tolled "until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim," applies to fraud claims. Maj. Op. at 14. As I read the Pennsylvania cases, however, the statute of limitations for a fraud claim is tolled only if the tortfeasor, after carrying out the concealment inherent in the tort, committed additional acts of concealment. Turtzo v. Boyer, 88 A.2d 884, 885 (Pa. 1952). Because plaintiffs do not even argue that defendants committed any such acts, plaintiffs cannot obtain the benefit of tolling under Pennsylvania law, and their Lanham Act fraud claim is time-barred.

I.

The Pennsylvania Supreme Court has squarely held that "[i]n an action based upon a fraud" the statute of limitations is tolled only if "such fraud has been actively concealed by the wrongdoer." Turtzo, 88 A.2d at 885. As the court explained, "fraud or concealment in the original transaction" is insufficient to extend the time for filing suit; "to excuse delay of the injured party in asserting his rights there must be an independent act of fraud or concealment which misled or prevented discovery." Id. This proposition was established as a matter of Pennsylvania law as early as 1901, Smith v. Blachley, 47 A. 985 (Pa. 1901), and has

18

been repeatedly reaffirmed in recent years. Northampton Cty. Area Commun. College v. Dow Chemical, U.S.A., 566 A.2d 591, 599 (Pa. Super. 1989) ("If the party committing fraud is also guilty of some acts of concealment or deception which hide[ ] from the plaintiff that he has a cause of action, then the statute will run from the time discovery of the alleged fraud is made, or in the exercise of reasonable diligence should have been made."), aff'd, 598 A.2d 1288 (Pa. 1991) (per curiam); In re Estate of Doerr, 565 A.2d 1207, 1211 (Pa. Super. 1989) ("[A] cause of action arising from fraud is complete when the transaction has ended[;] . . . the statute of limitations begins to run at once, unless discovery is prevented by active concealment.") (emendations in original) (quotation omitted). Accord In re Thorne's Estate, 25 A.2d 811, 815 (Pa. 1942); Dalzell v. Lewis, 97 A. 407, 408-09 (Pa. 1916); In re McKay, 110 B.R. 764, 767 (Bankr. W.D. Pa. 1990).

In Smith v. Blachley, the Pennsylvania Supreme Court reviewed the precedents at length and discussed two competing views of tolling in actions for fraud. The court explained:

It is said, in general, that in cases of fraud the statute runs only from discovery, or from when, with reasonable diligence, there ought to have been discovery. But a distinction is made in regard to the starting point between fraud completed and ending with the act which gives rise to the cause of action and fraud continued afterwards in efforts or acts tending to prevent discovery. On this distinction there are two widely divergent views. It is held, on the one hand, that the fraud, though complete and fully actionable, operates as of itself a continuing cause of action until discovery; while, on the other hand, it is held that, when the cause of action is once complete, the statute begins to run, and suit must be brought within the prescribed term, unless discovery is prevented by some additional and affirmative fraud done with that intent.

Id. at 985 (emphasis added). The court unambiguously aligned itself with the latter view, declaring that "[w]e regard the distinction as sound, well marked, and in harmony with the spirit and letter of the statute." Id. at 987. The court

19

observed that a tolling rule that delayed the running of the statute in all cases of fraud until discovery of the fraud would be incompatible with the settled rule that a cause of action for fraud accrues upon consummation of the fraud.

The cases which hold that, where fraud is concealed, or, as sometimes added, conceals itself, the statute runs only from discovery, practically repeal[ ] the statute pro tanto. Fraud is always concealed. If it was not, no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete.

Id.

In other words, the Pennsylvania Supreme Court reasoned as follows: The statute of limitations for fraud claims embodies a legislative judgment that, at least in typical cases, the plaintiff should begin suit within the specified period after the fraud occurs. Since the legislature presumably realized that some concealment is inherent in fraud, the legislature presumably realized as well that there will typically be some lag time between the occurrence of the fraud and its discovery by the victim. Thus, the legislature presumably took this typical lag time into account in framing the statute of limitations in thefirst place and it is therefore not appropriate for the courts to recognize a tolling rule to account for this sort of typical lag time. Only when there is the atypical lag time that results from subsequent acts of concealment is such a tolling rule appropriate.

The majority opines that it would be "inexplicabl[e]" for Pennsylvania to apply the liberal discovery rule to other tort claims and to subject fraud claims to a different, tougher tolling rule. Maj. Op. at 6. See also Maj. Op. at 11 (it "makes no sense" to say that a victim of fraud who does not discover the fraud during the two-year limitations period cannot recover unless the defendant actively concealed the fraud subsequent to its completion). I disagree.

While I might well agree that the majority's tolling rule represents sound public policy, it does not seem to me to be the rule that Pennsylvania has adopted, and I certainly do not think that Pennsylvania's apparent choice is either

20

"inexplicabl[e]" or irrational. In my view, the foregoing discussion and excerpt from Smith v. Blachley reveal why fraud claims might be viewed as requiring different treatment. Causes of action for fraud are unique in that they always involve concealment. In contrast, only a minority of actions for other torts involve conduct that was concealed from the victim at the time it was committed. An individual cause of action for personal injury, for example, is distinguished from the norm when it is alleged that the tortious conduct was concealed and that the plaintiff was unable to discover it until a subsequent time. Thus, in Ayers v. Morgan, 154 A.2d 788 (Pa. 1959), the court held, notwithstanding the two-year statute of limitations, that the plaintiff could maintain his suit against a surgeon who had negligently failed to remove a sponge from the plaintiff's intestines following surgery nine years earlier. Since the statute of limitations was designed for the paradigmatic personal injury case in which the plaintiff becomes aware of the injury at the time when the defendant performs the tortious act, it would be unfair and "illogical" to apply it to a case in which the plaintiff "does not know, and cannot know, for example, that a surgeon has negligently left a rubber tube in his body." Id. at 789.

The same rationale applies to other causes of action. In Lewey v. H.C. Frick Coke Co., 31 A. 261 (Pa. 1895), the plaintiff sued the defendant in trespass, contending that it had intruded onto his lands and stolen coal from beneath the surface. As in Ayers, the court emphasized that the plaintiff had no way of knowing that the invasion and theft were taking place, since "[h]e [could not] be present in the interior of the earth." Id. at 263-64. Many trespasses, like many personal injuries, are immediately apparent to a diligent plaintiff, but this particular trespass was not. Therefore, while in the usual trespass case the statute of limitations begins running upon commission of the trespass, "the statute runs against an injury committed in or to a lower stratum from the time of actual discovery, or the time when discovery was reasonably possible." Id. at 264.1

---

1. Contrary to the majority's implication, Lewey is poor authority for the application of the discovery rule to fraud causes of action for the

21

In contrast, since fraud always involves an element of concealment, something more is needed to distinguish a particular fraud claim from the norm. Accordingly, while the presence of concealment in a particular personal injury case might provide a sufficient reason to toll the statute in that case, under the reasoning of the Pennsylvania Supreme Court, something more, namely, an independent act of concealment, is required for tolling in a fraud case. This reasoning might lead one to question the wisdom of the legislature's enactment of a two-year statute of limitations for fraud claims. But it goes without saying that we are bound to apply the law of Pennsylvania whether or not we think it wise.

In my view, the foregoing clearly establishes that, at least at the time of Turtzo, it was the law in Pennsylvania that the fraud statute of limitations was tolled only upon a showing that the defendant engaged in affirmative acts of concealment, independent of the original fraud. The majority concludes that, at the present time, "there is no such general rule in Pennsylvania," and indeed holds the precise opposite: "when the underlying claim sounds in fraud, the statute of limitations is tolled by the tortious conduct, without any further action by the wrongdoer, until the fraud should have been discovered by the plaintiffs." Maj. Op. at 10-11. In reaching this conclusion, the majority distinguishes the cases I have cited and relies upon some

_____

additional reason that the court in Lewey actually held only that "the equitable rule that the statute shall run only from discovery, or a time when discovery might have been made, should be applied by courts of law" confronted with claims for equitable relief. Id. at 264. I do not dispute that "[g]enerally, courts have followed the old chancery rule adopted by the United States Supreme Court that when a party `has been injured by fraud and remains in ignorance without any fault or want of diligence or care on his part, the bar to the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' " Maj. Op. at 5 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)). But that principle is explicitly a principle of equity, and it is thus applicable only to claims in equity. Here, it is not contended that plaintiffs' Lanham Act fraud claim sounds in equity. The majority's reliance on Holmberg is thus unsound.

22

recent cases (mostly not decisions of the Pennsylvania Supreme Court) that create some ambiguity regarding the current state of Pennsylvania law with respect to the requirement of fraudulent concealment independent of the original fraud.2

I acknowledge that the cases have not been free from ambiguity in confirming the vitality of the rule dating from Smith v. Blachley. But the important point is that the Smith v. Blachley rule has never been repudiated by the Pennsylvania Supreme Court or Superior Court. Nor do I see any clear evidence in the state appellate decisions that the Pennsylvania Supreme Court would overrule Smith v. Blachley if given the chance. At least without far stronger evidence than we now have, I am not willing to predict such a result.

_____

2. In fact, several of the cases cited by the majority are at best ambiguous in their support of its conclusion. In Bickell v. Stein, 435 A.2d 610 (Pa. Super. 1981), the court stated that the "doctrine of fraudulent concealment appears somewhat narrower than the discovery rule, because it requires a showing that defendant himself prevented plaintiff from discovering the facts by acts of deception which were independent of the acts giving rise to [the] cause of action." Id. at 612 n.3 (emphasis added). It is true that the court then went on to note its opinion that the doctrine of fraudulent concealment had been "relaxed," id., but the case hardly stands clearly for the holding announced by the majority. The same is true of Knuth v. Erie-Crawford Dairy Cooperative Assoc., 463 F.2d 470, 482 (3d Cir. 1972), where we in fact held that "the governing standard" was whether there was "an affirmative, independent act of concealment." While in Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1280 (3d Cir. 1991), we did hold the statute of limitations tolled because of "inherent fraud" in the "self-concealing" false statements in the defendant's certifications that it was making the required benefit fund contributions, the fraudulent concealment (the certifications) was in fact independent of the wrong sued upon (the failure to pay the contributions). Finally, the majority relies on Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468 (Pa. 1983). The court in Pocono, however, only discussed the discovery rule as a prelude to finding that the plaintiff's claim was time-barred in any event because it could have learned of its injury through the exercise of reasonable diligence. Id. at 471. In addition to the cases cited by the majority, see Deemer v. Weaver, 187 A.215, 216 (Pa. 1936).

23

II.

Accordingly, it seems to me that under Pennsylvania law, as it now stands, a different showing is required to toll the statute of limitations for fraud claims, § 5524(7), than for other types of claims. While the statute is tolled for most tort claims if the plaintiff, "despite the exercise of due diligence, is unable to know of the existence of the injury and its cause," Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991), the statute is tolled for a fraud claim only if the defendant actively conceals the completed fraud. Since plaintiffs here do not even contend that defendants committed any independent acts of concealment, I would hold that plaintiffs cannot avail themselves of tolling under the Pennsylvania law governing fraud actions. Here, as in Turtzo, "[a]ssuming, as alleged, there were fraud in the execution of the affidavit[ ] [in connection with the re-registration application], there was no independent act of fraud or concealment which misled plaintiff[s] or prevented discovery." 88 A.2d at 886 (emphasis in original) (quotation omitted). See also Smith, 47 A. at 987 ("It is true that the defendant obtained the money, as the jury have found, by a scheme of the grossest fraud and deception, and used all possible efforts to prevent plaintiffs from finding out the truth; but all these were in the transaction itself and prior to its consummation."). Absent tolling, it is undisputed that plaintiffs' Lanham Act fraud claim is barred by § 5524(7)'s two-year statute of limitations. I would therefore affirm the district court's dismissal of plaintiffs' Lanham Act fraud claim.[3]

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

3. I agree with the majority's affirmance of the dismissal of plaintiffs' state law dilution and infringement claims. Plaintiffs have not appealed the dismissal of the remainder of their federal claims, so I would affirm the district court's decision not to exercise supplemental jurisdiction over plaintiffs' other state law claims once all of their federal claims had been dismissed.

24