EPPENDORF–NETHELER–
HINZ GmbH, Plaintiff,

v.

ENTERTON COMPANY Establishment,
National Labnet Company, Inc., and
Marsh Biomedical Products, Inc., De-
fendants.

No. 98 Civ. 3939(CBM).

United States District Court,
S.D. New York.

March 20, 2000.

Brown & Wood LLP, by, Joseph Jest, Steven Klein, David Toren, Peter Toren, New York City, for Plaintiff.

Weil, Gotshal & Manges LLP, by, Robert G. Sugarman, Jonathan S. Shapiro, New York City, for Defendant PZ HTL SA.

Greenbaum Rowe Smith Ravin Davis Himmel, LLP, by, Laura L. Fong, for Defendant National Labnet Company, Inc.

Woods, Oviatti, Gilman, Sturman & Clarke, LLP, by, William P. Smith, Jr., Rochester, NY, for Defendant Marsh Biomedical Products, Inc.

## OPINION GRANTING PARTIAL SUMMARY JUDGMENT

MOTLEY, District Judge.

### OPINION

This case involves claims of trademark infringement involving two types of laboratory equipment. Defendants have filed a motion for summary judgment to dismiss the claim regarding one of these two products. For the reasons outlined below, this court now grants defendants' motion on the basis of laches.

### BACKGROUND

This case involves allegations of trademark infringement involving laboratory equipment. The pieces of equipment in question are hand-held devices used to transfer small amounts of liquid. The two products are dispenser syringes and pipettes. The pipettes in question are small lumen glass tubes open on both ends. Dispenser syringes are disposable plastic tips which fit onto the end of the pipettes. Dispenser syringes serve to draw in or expel measured amounts of fluid. Only the dispenser syringes are the subject of defendants' motion for summary judgment.

The plaintiff is Eppendorf–Netheler–HINZ GmbH ("Eppendorf"), a German company which manufactures medical and laboratory equipment. The defendants are PZ HTL SA ("HTL"), National Labnet Company, Inc. ("Labnet") and Marsh Biomedical Products, Inc. ("Marsh"). HTL is a Polish company which manufactures laboratory equipment including dispenser syringes. HTL was previously owned by Enterton Company Establishment, the party named in the above case caption. Labnet is a New Jersey corporation that markets HTL's dispenser syringes in the United States. In some situations Labnet sells HTL's dispenser syringes through dealers, one of which is defendant Marsh. Eppendorf's claims against HTL and Labnet involve only dispenser syringes. Eppendorf's claims against Marsh involve pipettes and dispenser syringes. As the summary judgment motion involves only dispenser syringes, granting this motion serves to dismiss the entire case against HTL and Labnet but only part of the case against Marsh.

Eppendorf markets dispenser syringes under the trademarked names "Combitips" and "Eppendorf Combitips". HTL's dispenser syringes are sold in the United States under the trademarked name "Combi–Syringe". Eppendorf alleges that defendants' products employ Eppendorf's designs and infringe on plaintiff's proprietary rights.

Plaintiff brings this action under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, as well as common law unfair competition, and deceptive trade practices and trademark and trade dress dilution in violation of New York General Business Law.

### STANDARD FOR SUMMARY JUDGMENT

This circuit recognizes the value of summary judgment to expedite the process of litigation. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The mechanism of summary judgment promotes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome. The standard for summary judgment ensures that issues are efficiently resolved without compromising the rights of the non-moving party.

> Summary judgment may be granted only if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998) (internal citations omitted). Thus, the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when

the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue. Factual questions which prove immaterial fail to preclude summary judgment. *See Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (noting that the existence of unresolved immaterial issues does not suffice to defeat a motion for summary judgment).

A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment". *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986).

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue not merely one that is colorable of material fact is present.

*Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989).

## DISCUSSION

▆ This circuit recognizes the equitable defense of laches to prevent defendants from being unfairly prejudiced when plaintiffs inexcusably delay in taking action. "Defendant's proof in its laches defense must show that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at . this time." *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1040 (2nd Cir. 1980) (internal citations omitted). "This defense is available against both Lanham Act claims and New York state law claims of trademark infringement and unfair competition .... (to) bar both injunctive relief and damages" *Harley–Davidson, Inc. v. O'Connell,* 13 F.Supp.2d 271, 279 (N.D.N.Y.1998).

Plaintiff filed the complaint in this case in June of 1998. It is undisputed that HTL's dispenser syringes had been introduced into the United States market by 1990. It is also undisputed that Eppendorf possessed actual knowledge of this foray into the United States market at least as early as 1990. As early as June of 1991 an internal Eppendorf memorandum documents Eppendorf's awareness that HTL's dispenser syringes were being sold in competition with Eppendorf's own product in the United States.

In 1992 Eppendorf and HTL entered into negotiations to explore the possibility of developing a joint venture to manufacture dispenser syringes. This project never came to fruition and negotiations were abandoned by early 1995. In 1996 HTL brought suit against Eppendorf in Germany alleging breach of the joint venture agreement. The complaint was dismissed at the trial court level in 1998 and HTL filed an appeal.

▆ Plaintiff delayed eight years from the time it actually knew that HTL dispenser syringes were being sold in the

United States until it brought the present legal action. "The Lanham Act does not provide a specific statute of limitations ... In the absence of such a specific statute, an analogous statute of limitations may be applied." *Fourth Toro Family Limited Partnership v. PV Bakery, Inc.*, 88 F.Supp.2d 188, 195 (S.D.N.Y.2000).

The Second Circuit has recently held that a presumption of laches applies in a trademark action if the plaintiff fails to bring suit within the six-year statute of limitations applicable to state-law fraud in New York. This six-year period begins to run as soon as the plaintiff discovers the facts which create the cause of action.

*Harley–Davidson, Inc. v. O'Connell*, 13 F.Supp.2d 271, 279 (N.D.N.Y.1998) (internal citations omitted). Plaintiff's delay in bringing this suit entitles defendants to the presumption of laches. Plaintiff has not proffered sufficient evidence to rebut this presumption.

Defendants' laches motion prevails even if the presumption of laches is not applied as defendants have satisfied the necessary standard to affirmatively plead laches. As discussed above, a showing of laches requires three factors: 1) plaintiff's knowledge, 2) unreasonable delay, 3) prejudice to defendants. The first factor is undisputed as neither party denies plaintiff's actual knowledge of defendants' activities. The court now addresses whether plaintiff's eight year delay was unreasonable and whether it was prejudicial to defendants. The court finds that no genuine issue of material fact exists for any of these factors so the court may grant defendants' motion for partial summary judgment based on laches.

■ Plaintiff cannot excuse its delay in bringing the present action. Plaintiff has introduced no evidence to suggest that it was somehow prevented from asserting its rights prior to 1998. Plaintiff has argued that its delay should be excused because it warned HTL of possible action in the con-

text of the joint venture negotiations. This is not a sufficient affirmative step to enforce plaintiff's rights and thereby justify the delay in filing the present lawsuit. Courts within this circuit have ruled that the doctrine of laches barred claims brought by plaintiffs who slept on their rights to a lesser extent and for a shorter duration than did Eppendorf. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2nd Cir.1996) involved a false advertising claim regarding the comparison of two popular brands of tomato sauce. In that case the Second Circuit upheld the defense of laches. The plaintiff's delay in bringing that suit was only five years, a full three years less than the delay in the present action. Also, in *Conopco* the plaintiff made two formal challenges to the advertisements prior to filing suit. After a mere one year delay, the *Conopco* plaintiff lodged a complaint with the three major television networks that aired the relevant commercials. This complaint prompted the *Conopco* defendant to modify the text of its advertisements. Two years later, the *Conopco* plaintiff lodged a complaint with the Better Business Bureau's National Advertising Division. The *Conopco* plaintiff's actions clearly represent more formal and more intimidating notice than Eppendorf alleges it provided HTL, Labnet, or Marsh before bringing the present action. Prior to bringing this lawsuit Eppendorf took minimal action to protect its proprietary rights. For the purposes of defendants' motion for summary judgment this court will fully accept Eppendorf's account of its alleged warning to HTL, despite the absence of contemporaneous documentation of such. The court accepts as true Eppendorf's contention that, in the course of the joint venture negotiations, Eppendorf warned HTL that Eppendorf believed HTL's sale of dispenser syringes infringed on Eppendorf's proprietary rights and that Eppendorf might take action to enforce these rights. However, Eppendorf concedes that its warnings were not designed to send a harsh or

threatening message to HTL. "In order not to impair the negotiations, Eppendorf soft-pedaled its remarks to [HTL]". Pl.'s Mem. of Law at 5. Such a warning, which even plaintiff describes as "soft-pedaled", does not amount to a sufficient timely act by plaintiff's to protect its proprietary rights and defeat the present laches defense.

Plaintiff also attempts to excuse its delay by arguing that it reasonably discounted defendants' potential threat to Eppendorf's market share. "HTL, based in Poland, also had limited capacity and as a result would not be able to send large quantities to the U.S. In addition, Poland was not known as a source of high-quality and high-precision equipment in the laboratory and medical field". Pl.'s Mem of Law at 3. Plaintiff's arguments are unpersuasive. It is unreasonable and self serving for a medical supplies company to simply rest on the unsupported assertion that potential competitors from an entire country lack the Teutonic reputation for precision necessary to mount a credible challenge to Eppendorf's market share. Plaintiff's argument that it need not fear expansion of HTL's manufacturing capacity is also unfounded. Eppendorf argues that a reasonable businessperson need not expend resources to take action to protect its trademark against de minimis infringement. The situations in which courts have excused plaintiffs' delays because defendants' infringements were de minimis involved much smaller operations than HTL's. *See generally Lambda Electronics, Corp. v. Lambda Technology, Inc.,* (S.D.N.Y.1981)(excusing plaintiff's delay when defendant was a fledgling enterprise which engaged in no advertising); *see Schieffelin & Co. v. Jack Co. of Boca,* 850 F.Supp. 232, 253 (S.D.N.Y.1994) (excusing delay when the court described defendant as "an unsophisticated individual operating virtually out of his garage"). In contrast, HTL had manufactured dispenser syringes for large scale sale in Europe since the mid–1980s. Eppendorf had reason to antici-

pate that HTL could quickly develop significant sales of dispenser syringes in the United States, as in fact HTL did during the 1990s. HTL's manufacture of dispenser syringes was clearly not a fledgling endeavor such that a reasonable businessperson would dismiss its potential for competition as insignificant.

Defendants would be unfairly prejudiced if plaintiff were allowed to pursue its untimely claim. Two types of prejudice are frequently discussed in laches motions, both of which defendants have shown here.

> One form of prejudice is the decreased ability of the defendants to vindicate themselves that results from the death of witnesses or on account of fading memories or stale evidence ... Another type of prejudice operates on the principle that it would be inequitable in light of some change in defendant's position to permit plaintiff's claim to be enforced. Specifically, prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed.

*Harley–Davidson, Inc. v. O'Connell,* 13 F.Supp.2d 271, 282 (N.D.N.Y.1998) (internal citations omitted). All three defendants have demonstrated that the present claim is drastically more difficult to defend now than it would have been had it been filed in a timely manner. Defendants have offered sufficient evidence of unavailability of Eppendorf documents and employees from the relevant time period to demonstrate the difficulty of defending this stale claim. Two defendants, HTL and Labnet, have also proffered evidence of the second type of prejudice resulting from their substantial expenditure of resources and effort to develop their business in the United States.

■ Plaintiff unpersuasively asks this court to deny defendants the protection of laches by alleging that defendants have acted in bad faith. It is unsettled whether defendants bear the burden of demonstrating good faith or whether good faith is

presumed such that plaintiff bears the burden of rebutting this presumption. *See Harley–Davidson, Inc. v. O'Connell,* 13 F.Supp.2d 271, 284 (N.D.N.Y.1998) (recognizing the lack of a clear standard and stating "[defendants'] burden, at worst, is to show an absence of evidence of bad intent"). Defendant is entitled to enjoy laches protection under either standard. The similarity between HTL's and Eppendorf's dispenser syringes does not suffice to show bad faith, especially for a simple product not particularly amenable to dramatic differences in design. Nor does HTL's awareness of Eppendorf's trademark suffice to show bad faith. "Demonstration of good faith does not require that the infringer be in total ignorance of another's mark." *Harley–Davidson, Inc. v. O'Connell,* 13 F.Supp.2d 271, 284 (N.D.N.Y.1998). Plaintiff has not introduced sufficient evidence to rebut a presumption of good faith while defendants have demonstrated the absence of evidence of bad intent.

 Plaintiff further argues that the public interest in avoiding confusion trumps the laches defense. "No court in this circuit has addressed the existence of this partial exception to the laches defense." *Harley–Davidson, Inc. v. O'Connell,* 13 F.Supp.2d 271, 285 (N.D.N.Y. 1998). While the Second Circuit has not fully embraced this laches exception, it has allowed for the possibility that a particularly compelling public interest in avoiding confusion, where such confusion might compromise public health and safety, could defeat an otherwise valid laches defense in certain circumstances. *See Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 193–194 (2nd Cir.1996). No such compelling public interest exists in this case. "Plainly, there is no analytical mechanism for determining that actual confusion is significant in one case, rampant in a second, and de minimis in a third. The trial judge must rely upon his own common sense rather than upon any well-articulated legal principle in such cases." *Lambda Electronics Corp. v. Lambda*

*Technology, Inc.,* 515 F.Supp. 915, 927 (S.D.N.Y.1981). The likelihood of confusion is diminished by the fact that dispenser syringes are not typically impulse purchases acquired by unsophisticated consumers. Dispenser syringes are typically ordered from medical supply companies by laboratory personnel. Plaintiff has not demonstrated a high likelihood of confusion nor has plaintiff demonstrated potential hazards to public health and safety likely to arise from whatever confusion that might in fact occur. In order to fall within the narrow health and safety laches exception, plaintiff needed to show that customers were likely to mistakenly order HTL dispenser syringes, that these dispenser syringes would malfunction when Eppendorf syringes would have functioned properly, and that these malfunctions would jeopardize public health and safety. Plaintiff has made no such showing.

## CONCLUSION

For the reasons outlined above the court now grants defendants' motion for partial summary judgment based on laches. Thus, the entire case is dismissed as to defendants Enterton and Labnet. The case is dismissed as to defendant Marsh only as to the claims regarding dispenser syringes.