

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2002

# Island Insteel Sys v. Waters

Precedential or Non-Precedential: Precedential

Docket No. 00-2713

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Island Insteel Sys v. Waters" (2002). *2002 Decisions.* Paper 404.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/404

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 17, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2713

ISLAND INSTEEL SYSTEMS, INC.;
ISLAND INSTEEL CONSTRUCTION, INC.;
PETER W. CLARK; THE PETER W. CLARK FAMILY
TRUST; ALAN R. FEUERSTEIN, Appellants

v.

DARRIN WATERS; TAMMY WATERS; TAMMY MOST;
PANELS, INC.; CONCRETE PANELS CONSTRUCTION,
INC.; POOL VILLAS CONDOMINIUM ASSOCIATION,
AN UNINCORPORATED ASSOCIATION UNDER THE LAWS
OF THE UNITED STATES VIRGIN ISLANDS; UNKNOWN
DEFENDANTS A THROUGH Z

On Appeal From the District Court of the Virgin Islands
(D.C. Civ. No. 99-cv-00017)
District Judge: Honorable Raymond L. Finch, Chief Judge

Argued December 3, 2001

Before: BECKER, Chief Judge, NYGAARD and
COWEN, Circuit Judges.

(Filed July 17, 2002)

        ALAN R. FEUERSTEIN, ESQUIRE
         (ARGUED)
        Feuerstein & Smith, LLP
        17 St. Louis Place
        Buffalo, NY 14202-1502

        Counsel for Appellants

        JAMES M. DERR, ESQUIRE
         (ARGUED)
        28-29 Norre Gade
        P.O. Box 664
        St. Thomas, VI 00804

        DANIELLE C. COMEAUX, ESQUIRE
        Hodge & Francois
        1340 Taarnederg Road
        Charlotte Amalie, St. Thomas
        United States Virgin Islands 00802

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

In this Lanham Act trademark infringement action, plaintiffs appeal from an order of the District Court of the Virgin Islands granting defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs allege that defendants' unauthorized use of their "Insteel" trade name, which refers to a panel system of building construction, violates S 43(a) of the Lanham Act, 15 U.S.C. S 1125(a). The District Court held that it was clear from the complaint that plaintiffs' claims are subject to the two-year statute of limitations governing actions for fraud under Virgin Islands law and that their filing of an earlier identical action in the United States District Court for the District of Puerto Rico, which was dismissed for lack of personal jurisdiction, did not equitably toll the statute of limitations. Since the complaint in this case was not filed within the two-year limitations period, the District Court dismissed plaintiffs' claims as time-barred.

2

This appeal presents two main questions. First, we must determine the appropriate limitations period for these trademark infringement claims under S 43(a) of the Lanham Act. Second, we must determine whether filing suit in a court that lacks personal jurisdiction may equitably toll the statute of limitations if plaintiffs refile the lawsuit in a court that has jurisdiction. Both parties agree that because the Lanham Act lacks a statute of limitations, we must borrow a statute of limitations from Virgin Islands law. Plaintiffs submit that the most appropriate statute of limitations under Virgin Islands law is the catch-all six-year statute of limitations for "[a]n action upon a liability created by statute" that does not fall within any of the specifically enumerated limitations periods. 5 V.I.C. S 31(3)(B). Defendants respond that the cause of action under Virgin Islands law most analogous to plaintiffs' trademark infringement claims is either an action for common law fraud or an action for deceptive trade practices in violation of 12A V.I.C. S 101, both of which are subject to a two-year limitations period.

Because plaintiffs have failed to identify a specific statutory cause of action under Virgin Islands law that is analogous to their Lanham Act claim and is subject to the catch-all six-year limitations period for actions upon a liability created by a statute that lacks a statute of limitations, we decline to apply the six-year statute of limitations. That conclusion relegates us to a choice between an action for fraud and an action for deceptive trade practices, both subject to a two-year statute of limitations under Virgin Islands law. But we still must decide which cause of action more closely resembles plaintiffs' claims since the statute of limitations for fraud begins running on the date plaintiffs discovered the fraud, whereas the statute of limitations for deceptive trade practices begins running on the date the actionable

conduct occurred.

We hold that the cause of action under Virgin Islands law most analogous to a claim for trademark infringement under S 43(a) of the Lanham Act is the cause of action for deceptive trade practices in violation of 12A V.I.C.S 101. Like a trademark infringement action under S 43(a), but

unlike an action for common law fraud, an action for deceptive trade practices does not require proof of scienter. Moreover, while a common law fraud claim requires a plaintiff to prove actual reliance, an action for deceptive trade practices simply requires proof that the practice at issue has the "tendency or effect of deceiving or misleading consumers," which more closely resembles the"likelihood of confusion" element that is the touchstone of aS 43(a) claim. Accordingly, plaintiffs' claims in this case are subject to a two-year statute of limitations, which began running on the occurrence of the actionable conduct.

While plaintiffs concede that the allegedly unlawful conduct occurred more than two years before the date they filed this suit, invoking the doctrine of equitable tolling, they submit that even under this statute of limitations their suit is not time-barred since they filed an identical action in the District of Puerto Rico within the two-year limitations period. That suit was dismissed for lack of personal jurisdiction. Defendants respond that because the first action was dismissed for lack of personal jurisdiction, the District Court properly held that the filing of that action did not equitably toll the statute of limitations. Whether filing suit in a court that lacks personal jurisdiction over a defendant may equitably toll the statute of limitations presents us with a question of first impression under Virgin Islands law. Because: (1) there is no statute on point; (2) the American Law Institute Restatements of the Law are silent on the issue, see 1 V.I.C. S 4; and (3) there is a split of authority among those courts that have addressed the question under the common law of other states, we must select the rule that we believe to be better and more consistent with Virgin Islands jurisprudence and policy. See Polius v. Clark Equip. Co., 802 F.2d 75, 77 (3d Cir. 1986).

We hold that under Virgin Islands law, the statute of limitations for a second action may be equitably tolled by the filing of an earlier action dismissed for lack of personal jurisdiction if: (1) the first action gave the defendant timely notice of plaintiff 's claim; (2) the lapse of time between the first and second actions will not prejudice the defendant; and (3) the plaintiff prosecuted the first action in good faith and diligently filed the second action. This doctrine of

equitable tolling preserves the protections that statutes of limitations are intended to afford to defendants. At the

same time, it avoids the unfairness to plaintiffs that would occur if plaintiffs who diligently but mistakenly prosecute their claims in a court that lacks personal jurisdiction find their claims time-barred when they refile in a proper jurisdiction.

Application of this equitable tolling doctrine, like most equitable doctrines, is committed to the discretion of the district court in the first instance. Moreover, how the issue should be resolved in this case is far from clear. Therefore, we will vacate the order of the District Court and remand the case to the District Court to determine whether the plaintiffs satisfy the elements of this equitable tolling doctrine.

I.

Plaintiffs are Island Insteel Systems, Inc., Island Insteel Construction, Inc., and individual shareholders of those corporations, who allege that defendants unlawfully used the "Insteel" trade name. The defendants are Panels, Inc., Concrete Panels Construction, Inc., and their individual officers and shareholders, who were also officers and shareholders of the plaintiff corporations. In May 1994, the individual plaintiffs and individual defendants, then in business together, formed the plaintiff corporations to market in the U.S. Virgin Islands and the Caribbean the "Insteel" panel system of building construction distributed by Insteel Construction Systems, Inc., of Brunswick, Georgia ("Insteel Georgia"), which is not a party to this suit.

In September of 1995, Hurricane Marilyn devastated the Virgin Islands, causing severe property destruction. Homes constructed using the "Insteel" panel system, however, withstood the hurricane with little damage. Due to the "Insteel" buildings' survival of the hurricane, the plaintiff corporations were able to secure more than $500,000 worth of building contracts in St. Thomas and elsewhere. Plaintiffs were unable to begin work on these contracts until they obtained approval of their construction system under the new building code adopted by the U.S. Virgin

5

Islands in response to the severity of damage caused by the hurricane. The delay in plaintiffs' construction pending their approval caused a backlog of construction work, so that by early 1996, the plaintiff corporations' work calendars were completely full.

Plaintiffs allege that in January 1996, the individual defendants formed the defendant corporations, and, unbeknownst to plaintiffs, began to use the Insteel trade name to promote the business of the defendant corporations. On November 17, 1997, having learned of this usage, plaintiffs filed a complaint against defendants in the District Court for the District of Puerto Rico alleging that defendants' unauthorized use of the Insteel trade name violated S 43(a) of the Lanham Act. In an order docketed on

October 30, 1998, that court dismissed the complaint for lack of personal jurisdiction. On January 28, 1999, plaintiffs refiled their action in the District Court of the Virgin Islands.

The District Court granted defendants' 12(b)(6) motion to dismiss plaintiffs' claims as time-barred under the two-year statute of limitations governing actions for fraud under Virgin Islands law. Although plaintiffs had filed suit in the District of Puerto Rico within the two-year limitations period, the District Court held that the filing of that action did not equitably toll the statute of limitations, since the action was dismissed for lack of personal jurisdiction. Plaintiffs appeal from the District Court's order granting defendants' motion to dismiss. The District Court had jurisdiction over this matter pursuant to 28 U.S.C.S 1331. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291. We review de novo the District Court's order dismissing plaintiffs' claims under Rule 12(b)(6). See A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 249 n.25 (3d Cir. 2001).

II.

We must first determine the statute of limitations for trademark infringement claims under S 43(a) of the Lanham Act, 15 U.S.C. S 1125(a). Plaintiffs' claims are predicated on defendants' allegedly unlawful use of the "Insteel" trade

name, a "trade name" being "any name used by a person to identify his or her business or vocation." Lanham Act S 45, 15 U.S.C. S 1127. In referring to plaintiffs' claims as claims for "trademark" infringement, we adopt the common usage of the term "trademark" to refer generically to "the entire field of trademarks, service marks, trade names, and trade dress," Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 n.1 (7th Cir. 1998), all of which a business may appropriate to its exclusive use under S 43(a).

Under the trademark infringement prong of S 43(a):

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. S 1125(a)(1)(A).1

A.

Because the Lanham Act does not contain an express
statute of limitations, we follow the traditional practice of
borrowing the most analogous statute of limitations from
state law. See Beauty Time, Inc. v. VU Skin Sys., Inc., 118
F.3d 140, 143 (3d Cir. 1997) ("The Lanham Act contains no
express statute of limitations and the general rule is that
when a federal statute provides no limitations for suits, the

_____

1. The law governing trademark infringement underS 43(a), which
protects trademarks that are not federally registered, generally follows
the law governing infringement of registered trademarks, which are
protected under S 32 of the Lanham Act, 15 U.S.C. S 1114. See A.J.
Canfield Co. v. Honickman, 808 F.2d 291, 296, 299 n.9 (3d Cir. 1986).

7

court must look to the state statute of limitations for
analogous types of actions."). See generally Wilson v.
Garcia, 471 U.S. 261, 266-67 (1985) ("When Congress has
not established a time limitation for a federal cause of
action, the settled practice has been to adopt a local time
limitation as federal law if it is not inconsistent with federal
law or policy to do so.").

This "implied absorption of State statutes of limitation
within the interstices of . . . federal enactments is a phase
of fashioning remedial details where Congress has not
spoken but left matters for judicial determination .. . ."
Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946)."By
adopting the statute governing an analogous cause of
action under state law, federal law incorporates the State's
judgment on the proper balance between the policies of
repose and the substantive policies of enforcement
embodied in the state cause of action." Wilson, 471 U.S. at
271.

To be sure, it is inappropriate to "mechanically appl[y] a
state statute of limitations simply because a limitations
period is absent from the federal statute." Occidental Life
Ins. Co. v. EEOC, 432 U.S. 355, 367 (1977). In rare cases,
the Supreme Court has held that the absence of an express
limitations period may indicate a Congressional intent to
impose no time limitation at all upon a federal cause of
action. See id. at 366 (holding that there is no statute of
limitations applicable to the EEOC's ability to bring Title VII
enforcement proceedings in federal district court).
Moreover, if borrowing an analogous statute of limitations
from state law would "frustrate or interfere with the
implementation of national policies," courts must look to
federal law for an analogous limitations period. DelCostello
v. Int'l Bhd. of Teamsters, 462 U.S. 151, 161, 163 (1983)
(applying the NLRA statute of limitations to suits under
S 301 of the LMRA for breach of a collective bargaining
agreement); see also Agency Holding Corp. v. Malley-Duff &
Assocs., 483 U.S. 143, 156 (1987) (applying the Clayton Act

statute of limitations to civil RICO actions). See generally Occidental Life Ins. Co., 432 U.S. at 367 ("State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to

assure that the importation of state law will not frustrate or interfere with the implementation of national policies.").

In this case, however, neither party argues that borrowing the most analogous statute of limitations from state law would frustrate the achievement of federal policies, and we can see no reason for departing from the traditional practice of turning to state law as the"primary guide" in this area. See Agency Holding Corp. , 483 U.S. at 147 ("Given our longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence that we borrow state law."). We must therefore determine which cause of action under Virgin Islands law is most analogous to a trademark infringement action underS 43(a) of the Lanham Act, and borrow the corresponding statute of limitations.

B.

Plaintiffs argue that the most analogous statute of limitations under Virgin Islands law is the catch-all six-year period for "[a]n action upon a liability created by statute" that does not fall within any of the specifically enumerated limitations periods. 5 V.I.C. S 31(3)(B). Defendants respond that the most analogous statute of limitations is the two-year limitations period for fraud claims, which the District Court applied in granting defendants' motion to dismiss. See 5 V.I.C. S 31(5)(A) (establishing a two-year statute of limitations period for "[a]n action for . . . any injury to the person or rights of another not arising on contract and not herein especially enumerated"); Lawaetz v. Bank of Nova Scotia, 653 F. Supp. 1278, 1282 (D.V.I. 1987) ("Under Virgin Islands law, fraud is governed by a two-year limitations period . . . .") (citing 5 V.I.C.S 31(5)(a)). Alternatively, defendants submit that we should borrow the two-year limitations period applicable to actions under 12A V.I.C. S 108 for deceptive trade practices in violation of 12A V.I.C. S 101. See 12A V.I.C. S 108(j) ("An action under this section must be brought within two years after the occurrence of a violation of this chapter . . . .").

In defendants' view, this question is controlled by our

decision in Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140 (3d Cir. 1997), which applied Pennsylvania's two-year statute of limitations for fraud to plaintiff 's claim under S 38 of the Lanham Act, 15 U.S.C. S 1120, for fraudulent procurement of a trademark registration.2  The Court

explained that "[o]n this claim, it is undisputed that Pennsylvania's two-year statute of limitations for fraud actions would apply." 118 F.3d at 143. Because plaintiffs allege trademark infringement in violation of S 43(a) of the Lanham Act, however, our holding in Beauty Time  as to the appropriate statute of limitations to apply to claims for fraudulent procurement of a trademark registration in violation of S 38 of the Lanham Act is not controlling. Cf. Marshak v. Treadwell, 240 F.3d 184, 194-95 (3d Cir. 2001) (holding that Beauty Time does not govern the statute of limitations applicable to claims under S 14 of the Lanham Act, 15 U.S.C. S 1064, for cancellation of a trademark registration).

We believe that the Virgin Islands statute of limitations for fraud and the Virgin Islands statute of limitations for deceptive trade practices govern actions that are more analogous to plaintiffs' claims than the Virgin Islands catch-all statute of limitations for "a liability created by statute." The problem that we see with plaintiffs' argument in favor of applying the limitations period for"liabilit[ies] created by statute" is that it focuses on the source of law to the exclusion of the substance of the cause of action. That is, the statute of limitations period that plaintiffs urge on us would apply in this case because the source of plaintiffs' cause of action is a statute (the Lanham Act), but would not apply if plaintiffs brought a common law cause of action whose elements were identical to the elements of their Lanham Act cause of action. We conclude that it is

_____

2. Section 38 provides:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

5 U.S.C. S 1120.

more appropriate to borrow a limitations period under state law on the basis of the substantive elements of the analogous state cause of action, rather than on whether the cause of action is created by common law or statute. 3

The six-year statute of limitations could apply if plaintiffs identified a particular cause of action under Virgin Islands law governed by that limitations period. Plaintiffs, however, have failed to identify with particularity an analogous "liability created by statute" under Virgin Islands law that would justify applying the six-year residual statute of limitations. To be sure, neither a cause of action for fraud nor a cause of action for deceptive trade practices supplies a perfect analogue to S 43(a). For example, under both common law fraud and the Virgin Islands deceptive trade practices statute, a seller who misrepresents the source of

3. We do not gainsay that plaintiffs' Lanham Act claims fall within the plain language of the residual six-year statute of limitations under Virgin Islands law. Plaintiffs' claims would therefore be subject to this six-year limitations period if state statutes of limitations applied of their own force as a matter of state law to federal causes of action that lack an express statute of limitations provision, as is the case when federal courts apply state law under the Rules of Decision Act, 28 U.S.C. S 1652, and Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). See Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 158 (1987) (Scalia, J., concurring in the judgment) ("In its original form, during what I term the 'first phase' of the borrowing doctrine, our practice of applying state law in reality involved no borrowing at all; rather, we applied state limitations periods to federal causes of action because we believed that those state statutes applied of their own force, unless pre-empted by federal law."). The Supreme Court has made clear, however, that state statutes of limitations do not apply of their own force to federal causes of action that lack an express limitations period; rather, the characterization of the appropriate statute of limitations is a matter of federal, not state law. See Wilson v. Garcia, 471 U.S. 261, 269-70 (1985) ("In borrowing statutes of limitations for . . . federal claims, this Court has generally recognized that the problem of characterization is ultimately a question of federal law."); Holmberg v. Armbrecht, 327 U.S. 392 (1946) (holding that Erie does not require federal courts to apply state tolling doctrines to federal causes of action). Thus, when borrowing a statute of limitations from state law, we ask not which limitations period plaintiffs' claims would fall under if state law limitations periods governed of their own force, but rather which state law cause of action is most analogous to the federal cause of action at issue.

11

goods is liable only to consumers, not competitors. See 12A V.I.C. S 108 (creating a private remedy for violations of S 101 for consumers who are injured by deceptive trade practices). In contrast, S 43(a) creates a cause of action for competitors, not consumers. See Serbin v. Ziebart Int'l Corp., 11 F.3d 1163, 1164-65 (3d Cir. 1993) (holding that consumers who purchase goods or services in reliance on the vendor's false advertising lack standing to sue under the false advertising prong of S 43(a)). However, even though consumers lack standing to sue under S 43(a), one of the Lanham Act's underlying purposes, like that of the Virgin Islands deceptive trade practices statute and common law fraud, is to protect consumers from confusion as to the source of goods and services. See Inwood Labs., Inc. v. Ives Labs. Inc., 456 U.S. 844, 854 n.14 (1982) (characterizing the two goals of the Lanham Act as protecting the trademark owner's "goodwill which he spent energy, time, and money to obtain" and ensuring consumers'"ability to distinguish among the goods of competing manufacturers").

Because both common law fraud and the Virgin Islands deceptive trade practices statute generally impose liability on sellers who misrepresent the source of their goods in a manner that misleads consumers and harms competitors, causes of action for fraud and violations of the deceptive trade practices statute bear substantial similarities, in both

their elements and underlying purpose, to a cause of action for trademark infringement under S 43(a) of the Lanham Act. See Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997) ("It should be apparent that S 43(a) of the Lanham Act andS 10-1-372(a)(2) of the [Georgia Uniform Deceptive Trade Practices Act] provide analogous causes of action . . . ."); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996) ("As the language of the Act makes clear, there is an intimate relationship between fraud and injury under the Lanham Act.").

We therefore conclude that causes of action for fraud and deceptive trade practices are more analogous to aS 43(a) cause of action for trademark infringement than is"[a]n action upon a liability created by statute," 5 V.I.C. S 31(3)(B), and accordingly hold that the two-year statute of

limitations is the more appropriate limitations period to apply to plaintiffs' claims for trademark infringement under S 43(a). The weight of authority supports this view. See Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 796-97 (4th Cir. 2001) (applying the statute of limitations for the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. S 75-16.2, to plaintiffs' trademark infringement claims under the Lanham Act); Kason Indus., Inc., 120 F.3d at 1203-04 (holding that the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. S 10-1-370 et seq. , provides the most analogous cause of action under state law to plaintiffs' trademark infringement claims under S 43(a) of the Lanham Act, for purposes of borrowing a statute of limitations); Eppendorf-Netheler-Hinz GmbH v. Enterton Co., 89 F. Supp. 2d 483, 486 (S.D.N.Y. 2000) (borrowing the statute of limitations for fraud claims to create a presumption of laches applicable to plaintiff 's trademark infringement claims); cf. Conopco, 95 F.3d at 191-92 (drawing on the statute of limitations for fraud to presume that plaintiffs' false advertising claims under S 43(a) are barred by laches).

C.

Plaintiffs contend that even under a two-year statute of limitations period, their claims are viable because their discovery of defendants' allegedly actionable conduct occurred within two years before the filing of this suit. Whether the limitations period begins running from the date that plaintiffs discovered the actionable conduct, as would be the case under a "discovery rule," or whether the limitations period begins running from the date the actionable conduct occurred, depends on the state law governing the most analogous cause of action. See Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 144 (3d Cir. 1997) ("Because we look to state law for the appropriate statute of limitations, we also look to Pennsylvania law on the closely related questions of tolling and application.").4

4. In urging us to apply the discovery rule to their claims, plaintiffs rely on the Supreme Court decisions in Bailey v. Glover, 88 U.S. 342 (1874), and Holmberg v. Armbrecht, 327 U.S. 392 (1946). Bailey held that the federal statute of limitations under the Bankruptcy Act was tolled where

Under Virgin Islands law, the statute of limitations for fraud begins running at the time the plaintiff discovered the

_____

the defendant's fraud concealed from plaintiffs the existence of their cause of action. See Bailey, 88 U.S. at 348 ("[W]here the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."). Similarly, the Court in Holmberg held that state law rejecting the discovery rule did not apply to actions in equity to enforce a federal right that lacked a statute of limitations. See Holmberg, 327 U.S. at 397 ("It would be . . . incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled equitable federal doctrine as to fraud . . . .").

We are of course bound under our Internal Operating Procedures, see Third Circuit IOP 9.1, by Beauty Time. We are not uncomfortable with this posture, because while we acknowledge a possible tension between Beauty Time and these cases, we believe that they are reconcilable. In particular, Bailey addressed only the application of the discovery rule to an express federal statute of limitations, which is absent from the provisions of the Lanham Act at issue in this case and Beauty Time. Although Holmberg held that the discovery rule applied to a cause of action under a federal statute that, like the Lanham Act, lacked an express statute of limitations, Holmberg is reconcilable with Beauty Time on the ground that the statute at issue in Holmberg created only "a federal right for which the sole remedy is in equity." Holmberg, 327 U.S. at 395 (emphasis added). In contrast, the Lanham Act creates federal rights for which both legal and equitable remedies are available. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477 (1962) ("[A]n action for damages based upon a charge of trademark infringement . . . [is] subject to cognizance by a court of law."). Accordingly, we comfortably follow the holding of Beauty Time that where a court borrows a statute of limitations from state law, the court must also borrow from state law the relevant tolling principles. See Hardin v. Straub, 490 U.S. 536, 539 (1989) ("Limitations periods in S 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules . . . ."); Bd. of Regents v. Tomanio, 446 U.S. 478, 486 (1980) ("In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.") (quoting Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 464 (1975)).

fraud, whereas the statute of limitations for deceptive trade

practices begins running from the date the defendant committed the unlawful conduct. Compare 5 V.I.C. S 32(c) ("In an action upon a . . . fraud, . . . the limitation shall be deemed to commence only from . . . the discovery of the fraud . . . ."), with 12A V.I.C. S 108(j) ("An action under this section must be brought within two years after the occurrence of a violation of this chapter [governing deceptive trade practices] . . . ."). To determine whether the discovery rule applies to plaintiffs' Lanham Act claims, it is therefore necessary to decide whether claims for trademark infringement under S 43(a) of the Lanham Act are more analogous to common law fraud claims or claims for violations of the VI's deceptive trade practices statute.

The courts addressing the question are divided on whether common law fraud claims or claims under state unfair business practices statutes are more analogous to Lanham Act claims for trademark infringement. Compare Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 796-97 (4th Cir. 2001) (applying the statute of limitations for the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. S 75-16.2, to plaintiffs' trademark infringement claims under the Lanham Act), Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203-04 (11th Cir. 1997) (holding that the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. S 10-1-370 et seq. , provides the most analogous cause of action under state law to plaintiffs' trademark infringement claims under S 43(a) of the Lanham Act, for purposes of borrowing a statute of limitations), and Federal Express Corp. v. United States Postal Serv. , 75 F. Supp. 2d 807, 816-17 (W.D. Tenn. 1999) (applying the statute of limitations for the Tennessee Consumer Protection Act, T.C.A. S 47-18-104, to plaintiffs' claims under S 43(a) of the Lanham Act), with Eppendorf-Netheler-Hinz GmbH v. Enterton Co., 89 F. Supp. 2d 483, 486 (S.D.N.Y. 2000) (borrowing the statute of limitations for fraud claims to create a presumption of laches applicable to plaintiff 's trademark infringement claims), Harley-Davidson, Inc. v. Estate of O'Connell, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998) (same), Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc., 934 F. Supp. 796, 804-05 (S.D. Tex. 1996) (applying the fraud statute of limitations to

15

plaintiffs' trademark infringement claims underS 43(a)), and Johannsen v. Brown, 797 F. Supp. 835, 839-40 (D. Or. 1992) (same).5

An analysis of whether fraud claims or deceptive trade practices claims are more analogous to trademark infringement claims under S 43(a) of the Lanham Act must begin with a comparison of the elements of these causes of action. To establish trademark infringement under S 43(a)(1)(A) of the Lanham Act, a plaintiff must show that the defendant:

>       use[d] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false

designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. S 1125(a)(1)(A).

The Restatement (Second) of Torts defines the elements of common law fraudulent misrepresentation as follows:

One who fraudulently makes a misrepresentation of fact . . . for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused

_____

5. Those decisions addressing claims under the false advertising prong of S 43(a) have similarly divided on whether common law fraud or state deceptive trade practices statutes provide the appropriate limitations period. Compare Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191- 92 (2d Cir. 1996) (drawing on the statute of limitations for fraud to presume that plaintiffs' false advertising claims under S 43(a) of the Lanham Act are barred by laches), with Hot Wax, Inc. v. Warsaw Chem. Co., 45 F. Supp. 2d 635, 647 (N.D. Ill. 1999) (holding that the state law cause of action most analogous to plaintiffs' false advertising claims under S 43(a) of the Lanham Act is the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(e)), aff 'd on other grounds sub nom. Hot Wax, Inc. v. Turtle Wax, Inc. , 191 F.3d 813 (7th Cir. 1999).

16

to him by his justifiable reliance upon the misrepresentation.

Restatement (Second) of Torts S 525;6 see also Smith v. Commercial Banking Corp., 866 F.2d 576, 583 (3d Cir. 1989) ("[T]he elements of common law fraud . . . require that a party make a material misrepresentation that another reasonably relies upon to his or her detriment."). Common law fraud also includes a scienter element:

A misrepresentation is fraudulent if the maker

 (a) knows or believes that the matter is not as he represents it to be,

 (b) does not have the confidence in the accuracy of his representation that he states or implies, or

 (c) knows that he does not have the basis for his representation that he states or implies.

Restatement (Second) of Torts S 526.

Under the Virgin Islands deceptive trade practices law, "[n]o person shall engage in any deceptive or unconscionable trade practice in the sale . . . of any consumer goods or services . . . ." 12A V.I.C.S 101. The statute defines a "deceptive trade practice" as "any false . . . or misleading oral or written statement, visual description or other representation of any kind made in connection with the sale . . . of consumer goods or services, .. . which has the capacity, tendency or effect of deceiving or misleading consumers." 12A V.I.C. S 102(a). The private remedy for violations of S 101 provides that "a consumer who suffers a loss as a result of a violation of this chapter may recover actual damages or $250, whichever is greater." 12A V.I.C. S 108(b).

The most salient difference between S 101 of the Virgin Islands deceptive trade practices law and trademark

---

6. The Virgin Islands legislature has provided that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. S 4.

infringement under S 43(a) of the Lanham Act is that whereas S 43(a) applies to "uses in commerce" of infringing marks "in connection with any goods or services," 15 U.S.C. S 1125(a) (emphasis added), S 101 prohibits only deceptive trade practices "in the sale . . . of any consumer goods or services," (emphasis added), which are defined as "foods, services, credit and debts which are primarily for personal, household or family purposes." 12A V.I.C. S 102(c). Cf. Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1204 (11th Cir. 1997) (noting that the Georgia Fair Business Practices Act, O.C.G.A. S 10-1-390 et seq., "is significantly different from . . . the Lanham Act, because of the former statute's focus on the consumer (as opposed to the commercial) marketplace"). Like the scope of the Lanham Act, the scope of common law fraud is not limited to transactions involving consumers, but rather extends to any purchase in the commercial marketplace, such as transactions between wholesalers and retailers.

Although the scope of transactions covered by the Virgin Islands prohibition against deceptive trade practices is more limited than the scope of transactions covered by common law fraud and the Lanham Act, we believe that the differences between the elements of common law fraud and trademark infringement under S 43(a) are significant. In particular, the scienter requirement for common law fraud is absent from S 43(a). That is, unlike a defendant in a common law fraud case, a defendant may be liable for trademark infringement under S 43(a) even if he or she innocently used an infringing mark and lacked any intent to confuse consumers as to the source of the goods. See

Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir. 1958) ("The fact that the [infringing mark] appeared on [defendant's product] because of a mistake is not a defense to an action under this section for there is no requirement that the falsification occur wilfully and with intent to deceive."); see also Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 189 (2d Cir. 1980) (noting that S 43(a) "does not require proof of intent to deceive"). Similarly, there is nothing in S 101's prohibition against deceptive trade practices or S 102's definition of deceptive trade practices that requires an intent to deceive.

18

Common law fraud further differs from trademark infringement under S 43(a) and the deceptive trade practices prohibited by Virgin Islands statute in that common law fraud requires actual reliance on the defendant's misrepresentation, whereas S 43(a) simply requires a designation that is "likely to cause confusion," and a deceptive trade practice simply requires a representation that has the "tendency or effect of deceiving or misleading." 12A V.I.C. S 102(a); cf. Kason Indus., Inc., 120 F.3d at 1204 ("[W]hile the standard of the [Georgia Uniform Deceptive Trade Practices Act] and the Lanham Act is 'likelihood of confusion,' the standards for an arguably analogous claim under the [Georgia Fair Business Practices Act] is 'actual confusion.' ").

Finally, the statutory definition of "deceptive trade practices" specifically includes "representations . . . that the supplier has a sponsorship, approval, status, [or] affiliation," which have the "tendency . . . of misleading consumers." 12A V.I.C. S 102(a)(1). This prohibition against representations that tend to mislead consumers as to the source or affiliation of goods or services strongly resembles the prohibition under S 43(a) against any designation that "is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with another person, or as to the origin, sponsorship, or approval of [defendant's] goods, services, or commercial activities by another person."

Thus, although the Virgin Islands deceptive trade practices statute applies to a narrower range of transactions than common law fraud, within the range of covered transactions the conduct that renders a seller liable under the Virgin Islands deceptive trade practices statute bears a strong resemblance to the conduct that renders a seller liable for trademark infringement under S 43(a). In contrast, the doctrine of common law fraud renders a seller liable for misrepresenting the source of goods only if the seller possessed the requisite scienter and purchasers actually relied to their detriment on the misrepresentation. Neither of these elements is required under the deceptive trade practices statute or S 43(a).

19

We therefore hold that the cause of action under Virgin Islands law most analogous to a trademark infringement claim under S 43(a) of the Lanham Act, for purposes of borrowing a statute of limitations, is a cause of action under 12A V.I.C. S 108 for deceptive trade practices in violation of 12A V.I.C. S 101. This cause of action is subject to a two-year statute of limitations that begins running from the date the violation of the statute occurred, not the date the violation was discovered, as would be the case under the statute of limitations for fraud. 12A V.I.C. S 108(j).7 This holding makes it unnecessary for us to resolve the disputed question whether plaintiffs discovered the conduct complained of more than two years before filing this suit. Because plaintiffs do not argue that they commenced this action within two years of the allegedly actionable conduct, plaintiffs' claims were properly dismissed as time-barred unless the statute of limitations was equitably tolled.8

---

7. Under 12A V.I.C. S 108(j), "[a]n action under this section must be brought within two years after the occurrence of a violation of this chapter, within one year after the last payment in a consumer transaction involved in a violation of this chapter, or within one year after the termination of proceedings by the Director with respect to a violation of this chapter, whichever is later." The extension of the two-year limitations period to "one year after the last payment in a consumer transaction involved in a violation of this chapter" or "one year after the termination of proceedings by the Director with respect to a violation of this chapter" is clearly inapplicable in this case.

8. Plaintiffs do not argue that defendants' allegedly unlawful conduct continued during the two-year period prior to filing this suit and that their claims therefore survive the two-year statute of limitations under the continuing wrong doctrine. See Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999) ("The notion of a'continuing wrong' . . . is . . . prevalent in Lanham Act cases . . . . Under the notion of a continuing wrong, only the last infringing act need be within the statutory period."); see also Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir. 2001) ("[A]lthough the district court was correct to hold that [plaintiff] could not recover for claims that accrued outside the limitations periods, it erred to the extent that it dismissed [plaintiffs' Lanham Act] claims that were premised upon acts that occurred within the applicable periods.") (internal quotation marks and citations omitted).

20

III.

Plaintiffs argue that their filing of a similar action in the District Court for the District of Puerto Rico within the two-year limitations period equitably tolled the statute of limitations. Defendants respond that the doctrine of equitable tolling is inapplicable because plaintiffs' Puerto Rico suit was dismissed for lack of personal jurisdiction. According to defendants, the filing of a lawsuit in a court that lacks personal jurisdiction over the defendants does not toll the running of the limitations period.

There appears to be no binding case law on the question whether, under Virgin Islands law, a lawsuit filed in a court that lacks personal jurisdiction over the defendants may equitably toll the statute of limitations. In such a case, we are instructed by 1 V.I.C. S 4 that:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

But there is neither a Virgin Islands statute nor a Restatement rule deciding the question of equitable tolling in this case, and hence we must look to the common law "as generally understood and applied in the United States." See Abdallah v. Callender, 1 F.3d 141, 147 (3d Cir. 1993) ("[T]he common law as generally understood and applied in the United States applies in the Virgin Islands absent a statute or Restatement rule to the contrary . . . .").

Because many states have "savings statutes," under which the filing of an action later dismissed for reasons unrelated to the merits tolls the statute of limitations, there are few decisions addressing this question as a matter of common law. See Hosogai v. Kadota, 700 P.2d 1327, 1334 (Ariz. 1985) ("[A] clear majority of the states -- thirty-one -- presently have general savings statutes in civil actions."); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure S 1056 at 273 n.44 (3d ed. 2002) (noting that over half the states have savings statutes of some kind).

21

Among those courts that have addressed the question, there appears to be a split of authority. Compare Mayes v. Leipziger, 729 F.2d 605, 608 (9th Cir. 1984) (holding that under California common law, the filing of an action that is dismissed for lack of personal jurisdiction may equitably toll the statute of limitations with respect to a subsequently filed identical action), Hosogai v. Kadota, 700 P.2d 1327 (Ariz. 1985) (same holding, under Arizona common law), and Mitzner v. W. Ridgelawn Cemetery, Inc., 709 A.2d 825, 826 (N.J. Super. Ct. App. Div. 1998) (same holding, under New Jersey common law), with Young v. Clantech, Inc., 863 F.2d 300, 300 (3d Cir. 1988) (per curiam) (holding that under New Jersey common law, a lawsuit filed in a court that lacked personal jurisdiction over the defendant cannot equitably toll the statute of limitations), and Johnson v. City of Raleigh, 389 S.E.2d 849, 850 (N.C. Ct. App. 1990) (holding that under North Carolina common law, "a voluntarily dismissed suit which is based on defective service does not toll the statute of limitations").

As there is no majority common law rule governing this question, we must therefore select the more appropriate

rule as a matter of policy. See Polius v. Clark Equip. Co., 802 F.2d 75, 77 (3d Cir. 1986) ("Where the Restatement is silent and a split of authority exists, courts should select the sounder rule" in resolving questions of Virgin Islands law.). In choosing the better rule, we are guided by the policy rationale underlying statutes of limitations generally:

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 428 (1965) (internal quotation marks and citations omitted).

22

Similarly, in Sperling v. Hoffman-La Roche, Inc. , 24 F.3d 463 (3d Cir. 1994), we identified "three basic purposes a statute of limitations serves":

> They are first a practical and pragmatic device to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. . . . Secondly, limitations periods are intended to put defendants on notice of adverse claims. Finally, limitations periods prevent plaintiffs from sleeping on their rights.

Id. at 471-72 (internal quotation marks, citations, and alterations omitted).

Defendants rely on our decision in Young v. Clantech, Inc., 863 F.2d 300 (3d Cir. 1988) (per curiam), which held that under New Jersey law, a lawsuit filed in a court that lacks personal jurisdiction over the defendant cannot equitably toll the statute of limitations. Young , however, is not controlling here, since we must look to Virgin Islands law, not New Jersey law, to determine whether filing suit in a court that lacks personal jurisdiction may equitably toll the statute of limitations. See Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 144 (3d Cir. 1997) ("Because we look to state law for the appropriate statute of limitations, we also look to Pennsylvania law on the closely related questions of tolling and application.").

Nor do we find Young persuasive on the question whether the sounder rule as a matter of policy permits the filing of a first action in a court that lacks personal jurisdiction to toll the statute of limitations for purposes of a second

action. Young gave only cursory treatment to the policy questions implicated by its holding, and rested its prediction of how the New Jersey Supreme Court would decide the question of New Jersey law primarily on the New Jersey Supreme Court's case law in this area. See Young, 863 F.2d at 301 ("Traditionally, the filing of a case against a defendant in a court which did not have jurisdiction over the action tolled New Jersey's statute of limitations only if the court in which the case was originally filed had authority to transfer the case to the proper court.") (citing

23

Kaczmarek v. N.J. Turnpike Auth., 390 A.2d 597 (N.J. 1978)). Whereas in Young we were writing against a backdrop of New Jersey Supreme Court precedent, in this case we write on a clean slate, as there is no relevant binding authority on this point of Virgin Islands law.

We also note that the New Jersey Superior Court Appellate Division in Mitzner v. West Ridgelawn Cemetery, Inc., 709 A.2d 825 (N.J. Super. Ct. App. Div. 1998), disapproved Young's distinction between filing suit in a court that lacks subject matter jurisdiction, which tolls the statute of limitations under New Jersey law, see Galligan v. Westfield Ctr. Serv., Inc., 412 A.2d 122, 123 (N.J. 1980), and filing suit in a court that lacks in personam jurisdiction, which Young held does not toll the statute of limitations under New Jersey law but Mitzner held does:

> Although the [Young] court suggested that significant policy arguments support a distinction between the two types of defects, it did not spell them out. We do not perceive any. Indeed, if there is a distinction, the filing in a court without subject matter jurisdiction would seem to be the greater defect.

Mitzner, 709 A.2d at 828; cf. Burnett , 380 U.S. at 429 (holding that an action filed in an improper venue tolled the FELA statute of limitations, and noting that "venue objections may be waived by the defendant"). We therefore do not believe that Young is either controlling or persuasive on the question whether, purely as a matter of policy, the sounder rule is to permit equitable tolling where a plaintiff files an initial action in a court that lacks in personam jurisdiction over the defendants.

We believe that the rule adopted by the Arizona Supreme Court in Hosogai v. Kadota, 700 P.2d 1327 (Ariz. 1985), makes more sense than the rule of New Jersey common law adopted by Young. Hosogai held that a statute of limitations is equitably tolled for a second action by the filing of a procedurally defective first action if there is:"1) timely notice to the defendant in filing the first claim; 2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; [and] 3) reasonable and good faith conduct by the plaintiff in prosecuting the first action

24

and diligence in filing the second action." Hosogai, 700 P.2d at 1333; see also Mayes v. Leipziger, 729 F.2d 605, 608 (9th Cir. 1984) ("California equitably tolls its statutes of limitation during the pendency of an earlier case provided there is timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff.") (internal quotation marks and citation omitted).

In our view, the equitable tolling rule articulated in Hosogai avoids the unfairness that would occur if a plaintiff who diligently and mistakenly prosecuted his claim in a court that lacked personal jurisdiction were barred under the statute of limitations from promptly refiling in a proper jurisdiction. Cf. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (recognizing "the injustice" that would result "in plaintiff 's losing a substantial part of its cause of action under the statute of limitations merely because it made a mistake in thinking that the respondent corporations could be found or that they transact business" in the forum venue) (internal quotation marks and alterations omitted).

At the same time that the Hosogai rule avoids unfairness to plaintiffs who diligently prosecute their claims, it preserves the policies underlying statutes of limitations which, as the Supreme Court explained in Burnett , "assure fairness to defendants . . . . by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." 380 U.S. at 428. In Burnett, the Court held that an action dismissed for improper venue equitably tolled the FELA statute of limitations. The Court's holding rested on the conclusion that the policies underlying statutes of limitations would not be served by holding plaintiffs' claims time-barred:

> Petitioner here did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action. . . . Respondent could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy; in fact, respondent

25

> appeared specially in the Ohio court to file a motion for dismissal on grounds of improper venue.

Burnett, 380 U.S. at 429-30.

Similarly, the Hosogai rule protects defendants by permitting equitable tolling only if the filing of the first action put the defendant on notice within the limitations period, there was no prejudice to the defendant in defending the second action, and the plaintiff acted

reasonably and in good faith in prosecuting the first action and exercised diligence in prosecuting the second action.

To be sure, the fact-specific, multi-factored nature of this equitable tolling test will consume more judicial resources than an easily applied bright-line rule that the filing of an action in a court that lacks personal jurisdiction over the defendants does not toll the statute of limitations. Moreover, application of the Hosogai rule, because it is so fact-specific, may undermine predictability to some degree. These problems, however, are inherent in all equitable doctrines, which demand flexibility in order to avoid the arbitrariness of rigid rules. See Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility.").

Thus, we hold that under Virgin Islands law, the statute of limitations for a second action may be equitably tolled by the filing of a first action dismissed for lack of personal jurisdiction if: (1) the first action gave defendant timely notice of plaintiff 's claim; (2) the lapse of time between the first and second actions will not prejudice the defendant; and (3) the plaintiffs acted reasonably and in good faith in prosecuting the first action, and exercised diligence in filing the second action. Application of this test to the record before us does not yield a clear-cut answer. On the one hand, the suit filed in the District Court for the District of Puerto Rico within the two-year limitations period afforded defendants timely notice of plaintiffs' claims. Moreover, at oral argument, defendants were unable to identify any prejudice caused by plaintiffs' delay in bringing this suit following the dismissal of the first suit. On the other hand, plaintiffs' failure to request the District Court for the District of Puerto Rico to transfer the case to the Virgin

26

Islands, pursuant to 28 U.S.C. S 1631, if that court found that it lacked personal jurisdiction, may have been unreasonable.9 Furthermore, in waiting nearly three months to refile a substantially similar complaint in the Virgin Islands, plaintiffs may not have exercised sufficient diligence in prosecuting this action.

Application of this equitable doctrine is generally committed to the discretion of the trial court in the first instance. The record is not fully developed with respect to these issues, and the record that has been developed does not, as explained above, cut clearly in favor of plaintiffs or defendants. Accordingly, we will vacate the District Court's order dismissing plaintiffs' claims as time-barred, and remand the case to the District Court further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

9. The Puerto Rico District Court had authority, if it found that it lacked in personam jurisdiction, to transfer plaintiffs' first action to the District Court of the Virgin Islands. See 28 U.S.C.S 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it was transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."). Plaintiffs, however, did not request the Puerto Rico District Court, if it found that it lacked personal jurisdiction over the defendants, to transfer the case to the District of the Virgin Islands, and the Court apparently did not recognize that authority sua sponte.